**YEAGER ELECTRIC & PLUMBING CO.,
INC., Appellant,**

v.

**GAINES BUILDING, INC., et al.,
Appellees.**

No. 753.

Court of Civil Appeals of Texas,
Corpus Christi.

March 15, 1973.

Rehearing Denied April 5, 1973.

Hatch & Yeager, Ronald M. Yeager, Aransas Pass, for appellant.

Keys, Russell, Watson & Seaman, Ben A. Donnell, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This is a dispute over the priority of a mechanic's and materialman's lien and a deed of trust lien. Yeager Electric and Plumbing Co., Inc., the owner of the mechanic's and materialman's lien, filed suit October 30, 1970, against Gaines Building, Inc., the owner of the real estate involved, and Federal Deposit Insurance Corporation, the owner and holder of a deed of trust lien against the property involved in this suit. Henry Miller, doing business as Henry Miller Ceramic Tile Company, was made a party to the suit to determine the priority of his mechanic's and materialman's lien. The cause of action asserted against Gaines Building, Inc., was severed from the case. Appellant will hereinafter be referred to as Yeager and appellee as F.D.I.C.

The trial was before the court, without a jury, on stipulated facts. The trial court held that the deed of trust lien of F.D.I.C. was prior and superior to the liens of Yeager and Henry Miller Ceramic Tile Company; that the foreclosure and trustee's sale by F.D.I.C. on November 3, 1970, extinguished the liens of Yeager and Miller; and that there be awarded to F.D.I.C. the sum of $1,818.12 (proceeds from sale of the property) that was deposited in the registry of the court pursuant to the stipulation and agreement, dated February 19, 1971, between Yeager and F.D.I.C. Judgment was rendered accordingly and only Yeager has appealed.

Appellant contends that his affidavit of lien should prevail because it related back to the date of commencement of work on the site by him or, in the alternative, the date of the deed of the property to Gaines Building, Inc. He says both dates are prior to the inception of F.D.I.C.'s lien. We agree with his contention regarding the date of the commencement of work.

The other complaints of the appellant concern extinguishment of appellant's lien

by foreclosure and trustee's sale by F.D.I.C. and ordering of the deposit in the registry of the court paid to F.D.I.C. The parties entered into an agreement that effectively conditions the disposition of the deposit upon the determination of the first point above mentioned concerning inception of liens.

The facts are brief. On November 20, 1968 Monarch Development Corporation executed a Deed of Trust for the benefit of The First State Bank, Aransas Pass, Texas, covering, among other property, the lot subject to this suit to secure a note in the amount of $67,523.88. Later, a written proposal, dated March 8, 1969, by Yeager for air conditioning, plumbing and electrical (generally wiring) in the amount of $3,200.00 was submitted to Gaines Building, Inc., for work to be done on a residence, which was to be built on the lot. Yeager commenced work at the job site (the subject lot) on March 10, 1969, and finished June 3, 1969. Yeager was paid $1,600.00 and filed his affidavit claiming a mechanic's and materialman's lien on September 2, 1969, for the balance owed by $1,699.18.

On March 12, 1969, the following transactions took place:

1. Bank executed a release in favor of Monarch Development Corporation of the bank's lien (deed of trust of November 20, 1968) on the subject lot.

2. Monarch Development Corporation conveyed the subject lot by deed to Gaines Building, Inc.

3. Gaines Building, Inc., executed its note to the bank in the amount of $24,000.00.

4. Gaines Building, Inc., executed a deed of trust for the benefit of the bank to secure the note.

All such instruments were recorded March 17, 1969. The record does not reflect the time of day each document was

executed nor does it show the order in which they were executed. There are no provisions in any of the documents concerning vendor's lien (Monarch deed to Gaines) purchase money mortgage, or subrogation of one lien (Gaines to bank) to any other lien (Monarch to bank). In fact, it was stipulated that the advances made by the bank to Gaines on the $24,000.00 note were used for the improvements to the property in question.

Subsequently, F.D.I.C. succeeded to the interests of the bank in the note and deed of trust. Gaines Building, Inc., eventually defaulted and F.D.I.C. foreclosed. The resulting deed of trust sale failed to provide enough money to satisfy the unpaid balance of the note and the Yeager indebtedness. Thus, this suit was filed.

■ Article 5459, Vernon's Ann.Civ. St. (1958), controls priority of liens in our situation. It provides priority for mechanics' and materialmen's liens over all liens except those "on the land or improvement at the time of the inception" of the mechanics' or materialmen's liens. The mechanic's and materialman's lien has its inception at the time work is commenced on the job site, or materials are delivered thereon. And, if a deed of trust lien (based on money lent for improvements) is subsequently impressed on the property before the mechanic's and materialman's lien affidavit is later filed, the mechanic's and materialman's lien is prior and superior because it relates back to the time, or has its inception, the date work is commenced. University Savings and Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287 (Tex. Sup.1967).

■ Even if one furnishes material and labor (on the job site) to a prospective owner before he acquires title to the real estate, the mechanic's and materialman's lien is created if title is acquired later. Schultze v. Alamo Ice & Brewing Co., 2 Tex.Civ.App. 236, 21 S.W. 160 (1893, no writ).

■ When Yeager commenced work (March 10, 1969) on the subject lot, Gaines did not yet own it and the lot was already burdened with a deed of trust lien from Monarch to the bank. Subsequently, on March 12, 1969, the bank executed a release of the Monarch deed of trust lien on the lot. On the same day Monarch conveyed the same property to Gaines by a deed which recited a "consideration of $3,500.00 cash to it in hand paid by Gaines Building, Inc., receipt of which is hereby acknowledged, and for which *no lien, expressed or implied, is retained or shall exist,* have granted, sold and conveyed, . . ." (Emphasis supplied.) At that instant, when the property was conveyed to Gaines, Yeager's lien (subject to being later filed of record) attached to the property. Then, on the same day, when Gaines executed his deed of trust to the bank for improvements to be placed on the lot, that deed of trust became effective subject to Yeager's lien. This is so because, as to the subject property, the bank in the new deed of trust did not purport to keep the Monarch deed of trust lien alive nor did the bank, Gaines and Monarch attempt to do so in the deed to Gaines. And it is undisputed that it (Gaines' deed of trust) was not a purchase money lien.

We agree with the principle set out in *Security,* supra, as follows:

". . . Giving the lien priority is in accord with our long-standing rule of liberal construction for protection of laborers and materialmen who by their contribution add to the value of the security for the deed of trust debt."

Further, the concept of the inception of liens of mechanics and materialmen as relating back in time to on-site commencement of work is now statutory as a consequence of an amendment in 1971 of Article 5459, supra, which now provides:

"Sec. 2. The time of the *inception* of the lien, as used in this article, shall

mean the occurrence of the earliest of any of the following events:

(a) The actual commencement of construction of the improvements or the delivery of material to the land upon which the improvements are to be located for use thereon for which the lien herein provided results, provided such commencement or material is actually visible from inspection of the land upon which the improvements are being made; . . ." (Emphasis supplied.)

And there follows, in such amendment, provisions relative to inception as affected by agreements, both oral and written, to perform labor or furnish material.

Appellee relies on Irving Lumber Company v. Alltex Mortgage Company, 468 S. W.2d 341 (Tex.Sup.1971). There, a deed of trust was executed to the lender by borrower-developer contemporaneously with the vesting of title in developer and the deed of trust secured repayment of money advanced in part for the purchase price of the lots. The court held that title of the lots passed to developer burdened by the deed of trust and security interest of lender, and the foreclosure and sale under the deed of trust secured lender's superior title and extinguished mechanic's lien held by the contractor who had orally agreed with the developer to furnish labor and material for construction on lots prior to date when developer executed deed of trust. The *Alltex* case is readily distinguishable from the present case in that a purchase money mortgage was there involved. Vendor's liens and purchase money mortgages always have been considered superior by our courts in priority of lien situations. Further, in the *Alltex* case the work had not commenced and the contractor was relying on an *oral contract* for the inception time of his lien. The oral contract understandably gave no notice of any adverse claim to the lender receiving a subsequent deed of trust as security. Prior to the deed of trust, commencement of work would give such notice to the lender. There was no prior commencement of work in the *Alltex* case. There was in the present case.

The appellee also relies on National Western Life Insurance Company v. Acreman, 425 S.W.2d 815 (Tex.Sup.1968) and McCallen v. Mogul Producing & Refining Co., 257 S.W. 918 (Tex.Civ.App.—Galveston 1923, writ dism'd). In both cases the lenders' liens prevailed over the mechanics' and materialmen's liens. However, the liens held to be prior were purchase money mortgage liens.

All of appellant's points of error are, accordingly, sustained. The judgment of the trial court is reversed. Judgment is here rendered awarding appellant the sum of $1,818.12 deposited in the registry of the trial court pursuant to stipulation and agreement between the appellant and appellee.