867 F.2d 228
 In the Matter of WALLER CREEK, LTD., Debtor.
H.B. ZACHRY CO., Appellant,
v.
WALLER CREEK, LTD.; Allied Bank Beaumont, N.A.; Allied
Merchants Bank, N.A.; Allied Bank of Texas; and
City of Austin, Appellees.
In the Matter of WALLER PARKING GARAGE, LTD., Debtor.
H.B. ZACHRY CO., Appellant,
v.
WALLER PARKING GARAGE, LTD.; Allied Bank Beaumont, N.A.;
Allied Merchants Bank, N.A.; Allied Bank of
Texas; and City of Austin, Appellees.
 Nos. 88-2199, 88-2200.
 United States Court of Appeals,
Fifth Circuit.
 March 6, 1989.
 
 Donald W. Holcomb, Patrick S. Dohoney, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, Tex., for appellant.
 William K. Andrews, Winstead, McGuire, Sechrest & Minick, Houston, Tex., for Allied Merchants Bank, Allied Bank of Beaumont, Allied Bank of Texas, and City of Austin.
 Tony Chauveaux, Crutchfield, DeCordova & Brocato, Beaumont, Tex., for Waller Creek Ltd.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before KING, WILLIAMS and SMITH, Circuit Judges.
 JERRY E. SMITH, Circuit Judge:
 
 
 1
 This is literally a case on top of a case. These adversary proceedings in bankruptcy, reviewed together here, involve a hotel constructed on top of a parking garage in Austin, Texas. The plaintiff seeks to assert the priority of its mechanic's, materialman's, and constitutional liens on the parking garage in the first action, and on the hotel in the second. Defendants, which are secured parties and owners of the parking garage and hotel, contend that because the garage and hotel were constructed under separate contracts, the contractor is precluded from claiming that its liens on the garage property extend to the hotel property. Moreover, they contend that the inception of the contractor's liens occurred after the secured parties had perfected their interests.
 
 
 2
 The bankruptcy court, after hearing the contractor's evidence, ordered an involuntary dismissal of the contractor's claim; the district court affirmed. Agreeing with the bankruptcy court that the negotiation of two separate construction contracts worked a severance of the properties upon which the contractor could assert its liens, we join the district court in affirming the bankruptcy court's ruling. However, with respect to four issues which the bankruptcy court left unresolved, we decide in favor of the contractor on two and in favor of a bank on one, and we remand for further findings on the other.I. The Waller Creek Development Project.
 
 
 3
 The project that concerns us here was the brainchild of Lloyd Hayes, president of Park Commercial Investments, Inc. ("Park Investments"). To make his idea a reality, Hayes formed the Waller Creek Parking Garage ("Waller Parking") and Waller Creek Hotel ("Waller Hotel") Limited Partnerships, and installed Park Investments as the general partner of both. Hayes himself purchased the development site on April 13, 1983, and, on the same day, executed a deed of trust and security agreement in favor of Allied Bank Beaumont, N.A. ("Allied Beaumont"), which had loaned Hayes the $1.4 million he used to purchase the property. Hayes recorded all the documents on April 19, 1983.
 
 
 4
 On April 25, 1983, Hayes went to his contractor, H.B. Zachry, Inc. ("Zachry"), got a bid, and executed a contract to build a parking garage on the property he had acquired on April 13. He signed the contract as president of Park Investments, general partner in Waller Parking. On the same date, Hayes negotiated a separate contract with Zachry to construct a hotel in the air space above the garage. Hayes signed this second contract as president of Park Investments as well, but this time Park Investments was shown as the general partner of Waller Hotel.
 
 
 5
 At the time Hayes signed both construction contracts, Waller Parking did not own the land on which the garage would be built, and Waller Hotel did not own the air space which the hotel eventually would occupy above the planned garage. Exactly when Waller Hotel did acquire that air space is a matter of dispute.
 
 
 6
 The limited partnerships financed construction independently through industrial development bonds, issued and sold by the Austin Industrial Development Corporation ("AIDC"). On May 1, 1983, Hayes conveyed all the land he had acquired on April 13 to Waller Parking. AIDC loaned Waller Parking $6.5 million, receiving in return a deed of trust and security agreement on the property. The conveyance, together with the deed of trust and security agreement, was recorded on May 25, 1983. AIDC, via an indenture of trust, assigned the deed of trust to Allied Merchants Bank, N.A. ("Allied Merchants").
 
 
 7
 On that same day, Hayes paid off his $1.4 million note to Allied Beaumont, which then relinquished its security interest in the property. Also on May 25, Waller Parking and Waller Hotel executed a deed of trust and a reciprocal easement agreement, according to which Waller Parking conveyed the now-unencumbered air space to Waller Hotel so that the hotel's construction could go forward. Defendants maintain, however, that Waller Parking did not deliver the deed of conveyance to Waller Hotel until August 9, 1983.
 
 
 8
 On June 8, 1983, Zachry moved its trailer onto the site. Demolition of existing structures commenced on June 20 and continued through the end of the month. Excavation began on July 15; Zachry's subcontractor drilled the first pier on August 3 and poured the foundation piers on August 5.
 
 
 9
 On August 8, 1983, Allied Merchants executed a partial release of its lien, releasing the air space above the garage. This document, together with the May 25 conveyance of the air space, opened the way for Waller Hotel to begin work on the hotel. Once again, AIDC provided financing, raising $9.5 million through the sale of revenue bonds and receiving in exchange a deed of trust and security agreement to the hotel property. AIDC again assigned to Allied Merchants the right to repayment and the deed of trust.
 
 
 10
 The August 8 documents were evidently taken together to the Travis County Clerk's Office on August 9.[1] There, the county recording clerk, per usual practice, endorsed the documents with the hour and minute when they were filed. Allied Merchants's release of its security interest in the air space was file-stamped first at 12:59 p.m. on August 9. Then the clerk file-stamped the deed of conveyance from Waller Parking to Waller Hotel and the reciprocal easement agreement. That document bears the same hour and minute of filing as the release. However, the clerk file-stamped AIDC's deed of trust and security agreement at 1:01 p.m.
 
 
 11
 On February 24, 1984, Waller Hotel executed and recorded a second lien deed of trust and security agreement on the air space in favor of the City of Austin, which had made a loan of $1,044,000 for further hotel construction costs. On the same date, Waller Parking also executed a second lien and security agreement on the garage property in favor of the City in return for a loan of $523,000; this second transaction concerned only the garage site and not the air space. On June 23, 1985, the limited partnerships executed and recorded third liens in like manner in favor of Allied Beaumont. Finally, on September 13, 1985, Zachry recorded a lien affidavit against the entire property in the amount of $1,005,965 for material and labor furnished in connection with the parking garage, and in the amount of $1,194,001 for work done on the hotel.
 
 
 12
 II. Proceedings in the Bankruptcy Court.
 
 
 13
 Lloyd Hayes's project failed, and both limited partnerships filed voluntary Chapter 11 petitions on May 1, 1987. On October 1, 1987, Zachry brought the instant proceedings in bankruptcy court against both of the limited partnerships to determine the validity, priority, and extent of its mechanic's, materialman's, and constitutional liens.[2]
 
 
 14
 Zachry's theory is as follows: When it began construction work in June 1983, Waller Parking owned the entire development site. Zachry thus claims that the inception date of its lien makes it second in priority only to Allied Merchants's lien, which was recorded on May 25, 1983, when Waller Parking had first purchased the entire property. Zachry further contends that, under Texas caselaw, its construction efforts were sufficient to create a lien on the entire site prior to Waller Parking's August 9 conveyance of the hotel air space to Waller Hotel. When that transaction occurred, Zachry claims, its lien also attached to the hotel air space.
 
 
 15
 Zachry also asserts that its lien on the hotel air space gained first priority because of the order in which the documents of conveyance were filed. The first documents filed were Allied Merchants's release of its lien on the hotel airspace and the conveyance from Waller Parking to Waller Hotel, thereby leaving the hotel air space unencumbered during the two-minute interval before Allied Merchants's deed of trust was filed. It was then, Zachry maintains, that its mechanic's lien attached and gained first priority.
 
 
 16
 On the other side of the aisle, Allied Merchants argues that Zachry's execution of two separate construction contracts worked a "constructive severance" of the property for purposes of determining the extent of Zachry's mechanic's liens. It further claims that because Zachry did not commence construction under the hotel contract until May 1984--well after Allied Merchants's lien on the hotel air space was perfected--Zachry's interests are subordinate to that lien.
 
 
 17
 In the bankruptcy court, Zachry called one witness, its project engineer, Karen Skelton. After Zachry rested, defendants' counsel moved for a "directed verdict." The court took the motion under advisement and adjourned, without hearing defendants' witnesses. The court granted the motion, treating it as a motion for involuntary dismissal, and entered final judgment together with its findings of fact and conclusions of law.
 
 
 18
 In essence, the bankruptcy court found that (1) prior to August 9, 1983, Zachry had performed work under the contract pertaining to the garage; (2) Zachry had performed this work solely under the garage contract and its plans and specifications; (3) the parking garage involved an owner, a contract, and work that was "separate and distinct from the hotel contract"; and (4) Zachry did not commence construction under the hotel contract until May 1984.
 
 
 19
 From these findings, the court concluded that Zachry's work on the parking garage contract did not affect or alter the inception date of Zachry's mechanic's lien on the hotel property. In addition, because as a matter of law Zachry did not commence construction under the hotel contract until May 1984, its lien on the hotel air space did not relate back to a period prior to the conveyance of the air space from Waller Parking to Waller Hotel and the perfection of Allied Merchants's lien on that property. Thus, Zachry's lien was subordinate to that of Allied Merchants.
 
 
 20
 III. Standard of Review.
 
 
 21
 Allied Merchants's counsel misspoke at the bankruptcy hearing when he asked for a directed verdict after Zachry rested. Zachry attempts to exploit this lapse in vocabulary, arguing that the district court erred in applying the clearly erroneous standard and that, in fact, the proper standard is the Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc), standard for directed verdicts and judgments notwithstanding the verdict. Accordingly, Zachry urges that we review the district court's affirmance for any evidence of substantial weight that might allow one to draw a reasonable conclusion in favor of Zachry, and argues that because the record reflects such evidence, we should vacate the granting of the motion and remand the case for further hearings.
 
 
 22
 We cannot agree that this is the correct standard of review. The bankruptcy judge, although himself initially unsure of the proper nomenclature, treated the motion correctly as a motion for involuntary dismissal. We have held that
 
 
 23
 when a court renders judgment in a bench trial at the close of the plaintiffs' case, the judgment is properly denominated a dismissal under Federal Rule of Civil Procedure 41(b) because 'upon the facts and the law the plaintiff has shown no right to relief.' On appeal, we may review it as a dismissal, however, even if the district court referred to it as a directed verdict.
 
 
 24
 North Miss. Communications, Inc. v. Jones, 792 F.2d 1330, 1333 (5th Cir.1986).
 
 
 25
 Bankruptcy Rule 7041 incorporates Fed.R.Civ.P. 41(b), which provides in relevant part:
 
 
 26
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.... If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in rule 52(a).
 
 
 27
 Here, the bankruptcy court did submit findings of fact and conclusions of law in accordance with rules 41(b) and 52(a); the latter specifies that such findings of fact are not to be set aside unless clearly erroneous. Thus, the Bankruptcy Rules and the Federal Rules of Civil Procedure require that the district court review the bankruptcy court's findings of fact under the clearly-erroneous standard, though it may review freely that court's conclusions of law. See Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.), 622 F.2d 709, 713 (5th Cir.1980).[3] We do the same.
 
 
 28
 IV. Constructive Severance.
 
 
 29
 Although Zachry presents a litany of questions for review on appeal, the issue most hotly contested is its claim to a first priority lien upon the hotel property. Zachry maintains that it treated the garage/hotel project as a whole and that its work in June, July, and August 1983 created a mechanic's lien on the entire project; thus, when Waller Parking conveyed the air space to Waller Hotel, Zachry's lien for work already begun on the whole project attached to the hotel air space as well. See Yeager Elec. & Plumbing Co. v. Gaines Bldg., Inc., 492 S.W.2d 921, 923 (Tex.Civ.App.--Corpus Christi 1973, no writ). Defendants reply that since Zachry had signed two separate contracts for two projects, the parking garage and the hotel, Zachry was on notice that any mechanic's or materialman's lien arising out of its work on one project would not extend to work on the other.
 
 
 30
 A. Mechanic's and Materialman's Liens in Texas.
 
 
 31
 Mechanic's and materialman's liens are statutorily-created security interests, unique to each state and outside the scope of the Uniform Commercial Code. The Texas Supreme Court's leading statement on their inception and priority is found in Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc., 576 S.W.2d 794, 800-08 (Tex.1978).[4] Both sides cite Blaylock extensively.
 
 
 32
 The priority issues in Blaylock are similar to those here, although no issue of constructive severance of a construction project arose in that case. The Blaylock court construed Tex.Rev.Civ.Stat.Ann. art. 5459 Sec. 2, concerning the inception of mechanic's liens,[5] and held that subsection (1)(b), concerning visibility, is not the only standard by which a court should determine when construction has begun and thus when a mechanic's or materialman's lien has attached. 576 S.W.2d at 801. The court also held that mere preliminary and preparatory activities are not enough; instead, actual construction must commence.[6] Under most circumstances, said the court, "the commencement of construction of the improvements in the form of a building or a structure must entail the excavation for or the laying of the foundation." Id. at 802.
 
 
 33
 On the issue of priority, Blaylock rejected the lower court's holding that purchase money liens always take priority over mechanic's and materialman's liens. The court observed that
 
 
 34
 a properly perfected mechanic's lien has priority over all other liens, encumbrances, or mortgages upon the land. However, [the mechanic's lien provision] will not affect liens, encumbrances, or mortgages on the land at the time of inception of the mechanic's lien.
 
 
 35
 Id. at 804.
 
 
 36
 Finally, the court also addressed an issue of particular importance here: the inception of mechanic's liens when a contractor performs work for a party that does not yet own an interest in the property. First, the court stated, "the person contracting with a mechanic or materialman must have some interest in the property, either legal or equitable, upon which the lien may attach." If so, a court then may apply the "after-acquired-title" doctrine in its effort to determine the mechanic's lien's date of inception. That doctrine holds that
 
 
 37
 the lien attaches to whatever legal or equitable interest the contracting party had when the work was begun, and thereafter attaches to any other or greater interest whenever acquired before the lien is enforced: provided that the after-acquired title enlarges an estate or interest to which the lien has already become attached.
 
 
 38
 Id. at 805-06.
 
 
 39
 B. Zachry's Mechanic's Lien.
 
 
 40
 Here, the parties do not dispute that Zachry's activities on the site prior to August 9 were sufficient to give rise to a mechanic's and materialman's lien upon the garage property. Waller Parking had full title to the garage/hotel site when Zachry began work; its work prior to August 9 included demolition, excavation, and pier drilling. Hence, as to the garage site at least, a mechanic's lien could attach per Blaylock.
 
 
 41
 The more difficult question, however, is whether that lien extended to the air space in which the hotel was eventually built. Zachry contends that because the excavation and foundation work it did on the project prior to August 9 was necessary for both the garage and the hotel atop it, construction on both properties had commenced. While this arguably comports with common sense, the bankruptcy court found otherwise.
 
 
 42
 As explained above, the court found that Zachry had entered into two separate contracts. On the basis of Ms. Skelton's testimony to the effect that prior to May 1984 none of the construction work actually done on the project had been charged to the hotel contract, the court concluded that Zachry's construction activities under the garage contract did not give rise to a mechanic's lien upon the hotel air space.
 
 
 43
 Defendants assert that this conclusion was correct, arguing that the execution of two separate documents worked a "constructive severance" of the project into two parts. Their primary authority for this proposition is Lyon v. Logan, 68 Tex. 521, 5 S.W. 72 (1887). There, the court considered the appeal of a contractor who sought to foreclose a lien on several lots for labor and materials furnished under a single contract for the construction of buildings upon those lots. The court held that the lien could extend to all the lots, as the scope of the lien was within the control of the property owner, who had treated the lots as one property. The court stated,
 
 
 44
 This is a matter under the control of the owner of the property improved; and, if he does not see proper to make separate contracts for material to be used on each lot, he cannot be heard to say that the lien does not attach upon all the lots upon which the material is used. This rule operates no hardship on the owner of the property or persons who purchase from him with notice of the lien. If the former, owning contiguous lots, desires to affect them severally with a lien only for the material furnished for buildings or other improvements on each, he should so make his contract as to enable the material-man to know how much of the debt each lot is responsible for.
 
 
 45
 5 S.W. at 74. Zachry responds that a "constructive severance" is not a "constructive subdivision": Even if an owner were able to work a constructive severance of the projects by creating two different contracts for construction, the failure of those contracts to limit expressly the scope of the mechanic's liens means that there cannot have been a severance of the project for lien purposes.
 
 
 46
 Thus, we must determine whether the scope of a mechanic's lien can be limited simply by negotiating separate contracts for different segments of the construction. Though the caselaw is sparse,[7] we find that the reasoning in Lyon provides an answer.
 
 
 47
 The Lyon court stated two principles pertaining to the scope of mechanic's liens which we find to have continuing validity in Texas law. The first is that the scope of such a lien is a matter within the control of the property owner. Since Lyon, Texas courts have looked to the owner's contractual arrangements for improvements on the property in order to determine whether the lien extends to the entire property.[8]
 
 
 48
 Lyon's second principle seeks to protect the contractor from being deceived as to the value of the property upon which its lien will attach when it commits workers and materials to the project; thus, a mechanic's lien can be limited only when the contractor is able to determine which lot will stand as security for its construction efforts. See Houston Elec. Distrib. Co. v. MBB Enter., 703 S.W.2d 206, 208 (Tex.App.--Houston [14th Dist.] 1985, no writ). The key question, then, is whether, despite the existence of separate contracts, there is some danger that the contractor might be deceived as to the scope of its mechanic's or materialman's lien.
 
 
 49
 Absent some express limitation in the contract, such a danger can be dispelled only when it is obvious from the context that the two construction projects were, from the outset, separate and distinct from one another, and the parties treated them as such. Thus, we must be able to conclude that before the contractor committed any of its labor and materials to the effort, there were indications sufficient to prevent a reasonable contractor from being deceived as to the scope of its liens.
 
 
 50
 Here, the bankruptcy court found that the parking garage project "involved an owner, a contract, and work which were separate and distinct from the hotel contract, the work made the basis of the hotel contract, and the owner under the hotel contract." This finding is well supported in the record, which contains, in addition to the separate contracts themselves, numerous items of evidence to support the claim that the parties treated the projects as separate and distinct to such an extent that we can fairly conclude that Zachry was able to determine for how much of the construction debt each property was responsible.
 
 
 51
 We note, for example, that in the original outline and specifications prepared for the hotel and for the garage, Zachry was to perform all of the site-work, including demolition, earthwork, drainage, and pier-drilling under the garage contract alone. Moreover, after construction began, Zachry applied for payment for these activities only under the garage contract. In fact, it did not bill to the hotel contract any of the construction work performed prior to August 9. Its "Contractor's Application for Payment," covering the period from June 6, 1983, to August 25, 1983, lists charges to the hotel contract for only the most basic kinds of preparatory activities: the general contractor's fee, bond, mobilization, and engineering and layout, none of which the Blaylock court considered sufficient to give rise to a mechanic's lien.[9] See Blaylock, 576 S.W.2d at 802.
 
 
 52
 We therefore perceive no clear error in the bankruptcy court's finding that the contracts were separate and distinct, and we agree with that court that any of the work performed under the parking garage contract did not alter the inception date of the mechanic's lien on the hotel air space. Nor do we perceive error in the court's finding that construction under the hotel contract did not commence until May 1984. There is ample evidence in the record to support that finding. The contractor's applications for payment do not indicate any request for payment for construction activities under the hotel contract until the May 25, 1984, billing. In addition, Zachry's project engineer, Karen Skelton, testified on cross-examination that she did not begin making charges to the hotel account until May 1984, when structural framing for the hotel began.
 
 
 53
 In sum, despite the common-law principle in Texas that courts should construe the statutory provisions for mechanic's liens broadly,[10] the competing principle announced by the Lyon court, that an owner may limit the scope of mechanic's and materialman's liens by negotiating separate contracts for improvements, applies with convincing force in this case. The contracts indeed were separate and distinct, and the parties consistently treated them as such. We therefore agree with the bankruptcy court that Zachry's demolition, excavation, and pier drilling work, performed under the garage contract and billed to that contract alone, did not give rise to a debt for which Zachry has a lien on the hotel property.[11]
 
 
 54
 V. Loose Ends.
 
 
 55
 Zachry complains, as it should, that the bankruptcy court limited its findings and conclusions to the central issue in these proceedings, i.e., whether Zachry's mechanic's lien upon the garage property extended to the hotel property. Indeed, priority issues concerning both the garage and hotel properties remain.
 
 
 56
 A. The Alleyway.
 
 
 57
 The alleyway was twenty feet wide and ran through the middle of the site upon which the garage and hotel were constructed. On August 3, 1983, the City of Austin quitclaimed the alleyway to Waller Parking. Zachry contends that because it had undertaken construction on the site in June and July, its mechanic's lien on the property attached when Waller Parking received title to that property on August 3, and, because the property was unencumbered, Zachry claims first priority for its lien on the alleyway portion of the garage property.
 
 
 58
 Defendants argue that Zachry failed to raise the issue of its lien over the alleyway in its complaint and that as a result the issue was not tried by consent. Zachry responds that it did raise the issue when it pleaded, upon information and belief, that Waller Parking owned the garage site property, including "a portion of a 20-foot alley ... more particularly described by metes and bounds on Exhibit 'A'...." Exhibit "A" gives a surveyor's brief description and also mentions a portion of a twenty-foot alleyway.
 
 
 59
 The alleyway therefore appeared in the complaint only in a most general respect--as a part of the property upon which Zachry claimed to assert its lien. However, since federal standards of notice pleading apply to bankruptcy courts,[12] Zachry's complaint was sufficient to give notice of its intent to assert a mechanic's lien upon the alleyway. Moreover, as Zachry points out, the bankruptcy court recognized at the hearing that the alleyway presented a unique problem, though it did not resolve it either at the hearing or in its findings of fact and conclusions of law.
 
 
 60
 In a supplemental brief before this court, defendants argue that the parties, the bankruptcy court, and the district court all mistakenly assumed that the City held title to the alley. Defendants assert that, in reality, the City never held a fee simple title and that Waller Parking actually acquired title when it obtained the garage/hotel site on May 1, 1983. Thus, they argue that the City's quitclaim deed to Waller Parking on August 3, 1983, transferred no ownership interests and served only to relieve the property of remaining easements for drainage and utilities which the City held.
 
 
 61
 When the parties present a new argument of this kind, we will not consider issues which the trial court has not passed upon unless the question is purely one of law. See Clark v. Aetna Cas. & Sur. Co., 778 F.2d 242, 249 (5th Cir.1985). Though the issue of the alleyway's ownership ordinarily would present a question of fact, we find that in this instance ownership is established as a matter of law.
 
 
 62
 The rule in Texas is that "when a street or road is dedicated to the public, the governmental entity exercising jurisdiction over the street ordinarily acquires only an easement in the street." Word of Faith World Outreach v. Oechsner, 669 S.W.2d 364, 367 (Tex.App.--Dallas 1984, no writ). We conclude that this rule applies with respect to the alleyway, since the Texas legislature long ago declared that in the City of Austin, the abutting landowner holds fee title to the center of the street or alley. See Act Relinquishing the Title to Certain Streets in the City of Austin, ch. 7, Sec. 1, 26 H. Gammel, Laws of Texas 239 (Supp.Vol.1929) (41st Leg., 3d Called Sess.).[13]
 
 
 63
 Hence, because Waller Parking acquired the entire property, including both sides of the alley, it obtained fee title to the entire alley, subject only to the City's right-of-way. The City vacated that right-of-way on May 26, 1983, through Ordinance No. 830526-J.[14] The effect of the City's action was to cause the land to revert to the owner in fee simple;[15] thus, when the City vacated, Allied Merchants's deed of trust lien on the entire property took priority.[16] Therefore, we hold that Zachry's mechanic's and materialman's liens on the alleyway property are, as a matter of law, subordinate to those of Allied Merchants. We note, however, that because the evidence in the record is unambiguous and uncontroverted as to the fact that Zachry began demolition, excavation, and clearing activities on the alleyway during the summer of 1983, Zachry's mechanic's lien on the alleyway, like its lien on the garage property as a whole (see infra), is superior to the liens of the City and Allied Beaumont on the garage property.
 
 
 64
 B. Zachry's Place in the Garage Property Line.
 
 
 65
 Zachry admits that, excepting the alleyway, Allied Merchants has a first-priority lien over the garage property by virtue of its original deed of trust and security agreement dated May 25, 1983. However, Zachry contends that the inception of its mechanic's lien predates the second and third liens granted in favor of the City and Allied Beaumont, respectively.
 
 
 66
 The bankruptcy court's findings of fact state only that prior to August 9, 1983, Zachry performed "some work" under its separate construction contract with Waller Parking. We resolve any ambiguity in favor of Zachry, since review of the record finds uncontroverted evidence that Zachry's construction activities upon the site were sufficient under Blaylock to create a mechanic's lien upon that property.
 
 
 67
 We note, for example, not only the testimony of Ms. Skelton concerning the progress of construction during that period, but also the report of Allied Beaumont's field observer, dated August 2, 1983, stating that demolition and excavation had been accomplished and that pier drilling had begun. Since the evidence also conclusively indicates that the second and third liens on the garage property were not created until after February 24, 1984, we render for Zachry on this priority issue also, holding that Zachry's mechanic's lien on the garage property is second only to that of Allied Merchants.[17]
 
 
 68
 C. Zachry's Place in the Hotel Property Line.
 
 
 69
 Holding as we do that the bankruptcy court did not err in finding that Zachry commenced construction on the hotel property in May 1984, we conclude that Zachry's mechanic's lien upon the hotel property arose at that time. Zachry's mechanic's lien therefore is subordinate to the City of Austin's second lien on the hotel property, executed and recorded on February 24, 1984. However, this holding places Zachry's lien in a position superior to Allied Beaumont's third lien, executed on June 26, 1985. Because the record indicates that these dates are correct, we render for Zachry, holding that its mechanic's lien upon the hotel property is superior to that of Allied Beaumont.
 
 
 70
 In addition, however, Zachry asserted at the hearing and maintains on appeal that it holds a materialman's lien upon the hotel property that incepted prior to the City's second lien. The record does not contain sufficient information for us to determine whether this claim has merit. We must therefore remand this issue to the bankruptcy court for further findings and conclusions, consistent with Blaylock's dictates,[18] as to the inception date and priority of Zachry's materialman's lien upon the hotel property.
 
 
 71
 VI. Conclusion.
 
 
 72
 In No. 88-2199, the action against Waller Hotel, we AFFIRM the district court, and uphold the bankruptcy court's determination that Zachry does not have a first priority lien upon the hotel property. However, we RENDER for Zachry with respect to the priority of its lien over Allied Beaumont's third lien upon that property. In addition, we REMAND to the district court for further findings and conclusions concerning Zachry's claim to a materialman's lien that is prior to the City's lien.
 
 
 73
 In No. 88-2200, the action against Waller Parking, we RENDER for Allied Merchants, holding that its lien has priority over Zachry's with respect to the alleyway. Regarding the garage property itself, we RENDER for Zachry, holding that its mechanic's lien is second only to that of Allied Merchants.
 
 
 
 [1]
 Included with these documents were Allied Beaumont's release of its lien on the entire property, taken as security for its $1.4 million purchase money loan to Lloyd Hayes, and a memorandum of the lease agreement between Waller Parking, lessor, and Waller Hotel, lessee, concerning the hotel lobby
 
 
 [2]
 As with statutory mechanic's and materialman's liens, the constitutional lien has its inception as of the date the contractor commenced work and/or furnished materials to the owner to be consumed in construction. See Pierce v. Mays, 277 S.W.2d 155, 157-58 (Tex.Civ.App.--Amarillo 1954), aff'd, 154 Tex. 487, 281 S.W.2d 79 (1955). Hence, we make no distinctions as between constitutional and statutory liens in reviewing the lien issues on appeal here
 
 
 [3]
 See also Wilson v. Huffman (In re Missionary Baptist Found. of Am.), 818 F.2d 1135, 1142 (5th Cir.1987) (holding that "strict application of the clearly-erroneous rule is particularly important where the district court has affirmed the bankruptcy court's findings")
 
 
 [4]
 U.C.C. Sec. 9-104(c), concerning transactions excluded from article 9, states that among the transactions excluded are "lien[s] given by statute or other rule of law for services or materials except as provided in section 9-310 on priority of such liens." See Tex.Bus. & Com.Code Sec. 9.104(3) (Vernon 1989)
 In turn, U.C.C. Sec. 9-310, Tex.Bus. & Com.Code Sec. 9.310 (Vernon 1989), provides that mechanic's and materialman's liens take priority over a perfected security interest, unless the lien is statutory and the statute expressly provides otherwise. In Texas, the statutes governing mechanic's and materialman's liens do provide otherwise; Tex.Prop.Code Secs. 53.123, 53.124 (Vernon 1984) (previously Tex.Rev.Civ.Stat.Ann. art. 5459 Secs. 1, 2) allow a competing security interest to take priority over a mechanic's or materialman's lien if that competing interest was perfected before the inception date of the mechanic's lien. Thus, the inception date of a mechanic's lien will determine its priority. The court therefore went to some length in Blaylock to explain the conditions necessary for the inception of a mechanic's lien. The difference between the instant case and Blaylock, however, is that this dispute does not focus upon the inception date of Zachry's lien so much as upon the extent of the property to which its lien attached.
 
 
 [5]
 The recodified version of that statute provides:
 (a) For purposes of section 53.123, the time of inception of a mechanic's lien is the earlier of:
 (1) commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used; or
 (2) recording of a written agreement, or if the agreement is oral, an affidavit stating that the lien claimant has entered into an agreement with the owner or the owner's contractor or subcontractor, to construct all or part of any improvements or to perform labor, furnish material, or provide specially fabricated material in connection with the construction.
 (b) The construction or materials under Subdivision (1) of Subsection (a) must be visible from inspection of the land on which the improvements are being made.
 Tex.Prop.Code Ann. Sec. 53.124(a)(1) (Vernon 1984).
 
 
 [6]
 As to when a materialman's lien arises, the court observed that the materials involved must be delivered to the construction site and be visible. They must also be either materials that will be consumed during construction or materials that will be incorporated into the permanent structure. 576 S.W.2d at 803
 
 
 [7]
 In terms of more recent caselaw to support its point of view, Zachry can do little better. It quotes from R.B. Spencer & Co. v. Brown, 198 S.W. 1179, 1180 (Tex.Civ.App.--El Paso 1917, writ ref'd), which states that "by contract of sale the owner may sever such a fixture [a building] from the realty without a physical detachment, making a constructive severance." Zachry concludes from this language that an owner of property may work a constructive severance limiting a mechanic's lien only by conveying away part of the property before the mechanic's lien arises. Yet the flaw in Zachry's reasoning is obvious: Brown does not say that a partial conveyance is the only way to limit the scope of a mechanic's lien. The case therefore does not foreclose in any respect the possibility that a mechanic's lien may be limited in scope by negotiating separate contracts for construction
 
 
 [8]
 See, e.g., Oil Field Salvage Co. v. Simon, 140 Tex. 456, 168 S.W.2d 848 (1943); Habitat, Inc. v. McKanna, 523 S.W.2d 787, 789 (Tex.Civ.App.--Eastland 1974, no writ); Bryant-Link Co. v. W.H. Norris Lumber Co., 61 S.W.2d 160, 161 (Tex.Civ.App.--Amarillo 1933, writ dism'd)
 Zachry cites Guaranty Sav. Loan & Invest. Co. v. Cash, 99 Tex. 555, 91 S.W. 781 (1906), for the proposition that the statute, rather than a contract, determines the scope of a mechanic's or materialman's lien. The holding in that case, however, does not support such a broad proposition. Instead, the court considered only whether a single contract could expand a mechanic's lien to include separate and distinct houses on non-contiguous lots. Though it accepted the holding of Lyon, the court was unwilling to read the statute, which gives a lien upon the building and the "tract" of land necessarily connected therewith, as permitting a single contract to give rise to a mechanic's lien upon parcels of land separated from each other by intervening lands. 91 S.W. at 783.
 The Guaranty case therefore is inapposite; it states only the general rule that a mechanic's lien arising out of work done under a single contract cannot extend to non-contiguous lots. See Centex Materials, Inc. v. Dalton, 574 S.W.2d 621, 624 (Tex.Civ.App.--Tyler 1978, no writ). It in no way abrogates the Lyon principle that places in the hands of the owner the power to limit the scope of mechanic's liens.
 
 
 [9]
 In addition, we find in the record "Field Observer's Reports," prepared at the behest of Allied Beaumont, which periodically assessed the contractor's progress and the validity of its claims for payment. The report dated August 2, 1983, states:
 The contractor is also requesting $423,264 under the line item 'Garage Site Work.' We would note that the garage request for payment includes a 'Site Work' line item, while the hotel request does not. Therefore, site work related construction will be requested as a part of the Garage application and costs in lieu of the Hotel. The Contractor indicates that the request for this month under the line item 'Site Work' includes demolition below ground, including removal of pre-existing foundation materials and debris, as well as the rough grade and excavation of the overall hotel/garage site.
 This excerpt reflects the fact that the very site-work which Zachry contends gave rise to a mechanic's lien upon the hotel property was purposefully included only in the garage contract, and, at Zachry's request, was billed to the garage contract alone.
 
 
 [10]
 See First Nat'l Bank v. Whirlpool Corp., 517 S.W.2d 262, 269 (Tex.1974)
 
 
 [11]
 We therefore do not address Zachry's argument that its lien on the hotel property gained priority over Allied Merchants's deed of trust and security agreement during the two-minute gap created by the clerk's file-stamping the conveyance and release prior to stamping Allied Merchants's deed
 
 
 [12]
 See Sturdevant v. Maley (In re Sturdevant), 415 F.2d 465, 467 (5th Cir.1969) (citing Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))
 
 
 [13]
 The text of section 1 of the act reads:
 Subject to the reservations, rights, privileges and easements herein set forth, there shall be and is hereby relinquished to each owner of land abutting streets, alleys or highways in the City of Austin, Texas, the fee title to the center of the street, alley or highway upon which the particular land abuts, and for the distance along such street, alley or highway that the land abuts.
 
 
 [14]
 Though the City ordinance was never introduced into the record, we take judicial notice of it. See United States v. City of Miami, 664 F.2d 435, 443 n. 16 (5th Cir. Dec. 1981) (en banc). The power of a federal court to take judicial notice of legislative facts is less constrained than its power to take notice of adjudicative facts. See Fed.R.Evid. 201 advisory committee note. The reason is that legislative facts present a "higher degree of indisputability," and judges possess skills particularly suited to determining what the applicable law is in a given case. See 10 J. Moore & H. Bendix, Moore's Federal Practice
 p 201.01[3-1] (2d ed. 1988).
 Professor Weinstein also endorses the proposition that federal courts should take judicial notice of local statutes and ordinances, but he provides an alternative justification and a helpful restriction:
 Under Rule 43(a) of the Federal Rules of Civil Procedure, federal courts might take notice of a state's private statutes, regulations, and ordinances, if these matters were judicially noticeable under the law of the state in which the federal court was sitting, since under rule 43(a) the statute or rule which favored the reception of the evidence governed. In the absence of Rule 43(a) a federal court could continue to judicially notice those matters accorded judicial notice by a state.
 
 
 [1]
 J. Weinstein & M. Berger, Weinstein's Evidence p 200 at 200-12 (1988) (citations omitted)
 The reason for examining the state's judicial notice practice is not that matters of judicial notice are subject to the Erie doctrine, for both Professor Moore and Professor Weinstein emphasize that a federal court's taking notice of legislative facts is a purely procedural enterprise; rather, it is that the court needs to ensure the indisputability of the ordinance's validity. Thus, Weinstein states: "The problem is not one of empowering a court to act but rather of working out a method of informing the court and of making the materials readily available." Id. In Texas, a court may take judicial notice of the ordinances of municipalities and counties of Texas, the contents of the Texas Register, and of the codified rules of the agencies published in the Administrative Code. Tex.R.Evid. 204. Hence, we are confident that taking judicial notice of Austin Ordinance No. 830526-J fits within the general principles supporting the practice of judicial notice.
 
 
 [15]
 See Miller v. Cretien, 488 S.W.2d 893, 897 (Tex.Civ.App.--Fort Worth 1972, writ ref'd n.r.e.)
 
 
 [16]
 In response to the defendants' supplemental brief on the alleyway, Zachry now contends that Allied Merchants's deed of trust lien on the entire property excludes the alleyway. After reviewing the deed of trust, which is part of the record, we cannot agree. The lien merely states that it is "subject to the rights of the parties and/or the City of Austin and to that portion of the property transversing Block [the alleyway]." Zachry's argument exploits a typographical error in order to force an interpretation that would exclude the alleyway; the sentence should read "in and to that portion...."; otherwise, its meaning--that the lien is subject to an alleyway--is absurd. As we point out here, the City's interests were limited to easements over the alleyway, the most important of which was vacated some time before Zachry began construction, and did not alter the fee title which Waller Parking acquired with the property
 
 
 [17]
 Counsel representing the second and third lienholders, i.e., the City and Allied Beaumont, were present at the hearing and did not contest Zachry's claim to a mechanic's lien upon the garage property. For example, counsel for the City stated the following:
 The City's lien on the garage arose on February 24, 1984, when the Deed of Trust was filed. The City's lien on the hotel also arose on February 24, 1984, when the Deed of Trust for the hotel was filed. If Zachry commenced work on the garage prior to February 24, 1984, the City acknowledges that Zachry's lien on the garage is prior to the City's lien. However, the City agrees with Allied that commencement of work on the garage does not constitute commencement of work on the hotel.
 
 
 [18]
 See, e.g., supra n. 6