H. Warren HOYT and Jesus
Chapel, Plaintiffs,

v.

The CITY OF EL PASO, TEXAS and Greg Abbot, in his official capacity as Attorney General of Texas, John Cook, in his official and individual capacity as Mayor of the City of El Paso, Texas, and as a private citizen, and Jaime Esparza, in his official capacity as District Attorney of El Paso County, Texas, Defendants.

No. EP–11–CV–485–KC.

United States District Court,
W.D. Texas,
El Paso Division.

July 10, 2012.

or failure in obtaining privileges could impact the ultimate analysis.

Troy Chandler Brown, Troy C. Brown, PC, El Paso, TX, Kevin H. Theriot, Alliance Defense Fund, Joel Oster, Leawood, KS, for Plaintiffs.

Kenneth Allan Krohn, Office of the City Attorney, Duane A. Baker, Attorney at Law, Michael Rudy Wyatt, El Paso, TX, Erika M. Kane, Assistant Attorney General, Kay Crisp, Kenneth Allan Krohn, Office of the Texas Attorney General, Austin, TX, for Defendants.

## *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Attorney General Greg Abbott's Motion to Dismiss ("Abbott Motion"), ECF No. 35; District Attorney Jaime Esparza's Motion to Dismiss ("Esparza Motion"), ECF No. 38; John Cook's Motion to Dismiss ("Cook Motion"), ECF No. 41; City of El Paso and Mayor John Cook's Motion to Dismiss ("City Motion"), ECF No. 47, (collectively, the "Motions to Dismiss"), and H. Warren Hoyt and Jesus Chapel's Motion for Preliminary Injunction ("PI Motion"), ECF No. 18. For the reasons set forth herein, the Court **GRANTS** the Motions to Dismiss. The Court **DENIES** the PI Motion as moot.

In order to bring this case, it is necessary for Plaintiffs H. Warren Hoyt and Jesus Chapel ("Plaintiffs") to properly plead a justiciable injury. Plaintiffs assert that they want to circulate recall petitions in an effort to recall City of El Paso Mayor John Cook ("Cook" or "the Mayor"), Representative Steve Ortega ("Ortega"), and Representative Susie Byrd ("Byrd"). Plaintiffs claim that Defendants are preventing them from circulating such petitions by threatening to prosecute them under the Texas Election Code. According to Plaintiffs, the actions of Defendants Greg Abbott, John Cook, Jaime Esparza, and the City of El Paso (collectively "Defendants") have chilled their constitutional rights.

Plaintiffs's case fails for a number of reasons. First, the challenged laws do not appear to prohibit Plaintiffs from engaging in the circulation of recall petitions, as alleged. The primary statute at issue, section 253.094(b) of the Texas Election Code, only prohibits petition circulation when such activity constitutes a political contribution. Plaintiffs have not alleged that they wish to engage in activity that constitutes a political contribution under the law. Nor have they demonstrated any constitutional infirmity with regard to the regulation of petition circulation in this manner.

Second, there is no credible basis for Plaintiffs' alleged fear of prosecution; instead, Plaintiffs merely allege a subjective fear of enforcement. Without alleging more than speculation, this claim is insufficient. Plaintiffs claim that other churches have been sued under the challenged statutes, but it is not clear from Plaintiffs' Complaint that these churches engaged in similar activity. Further, some of Defendants do not even have the power to enforce the Texas Election Code (the "Election Code"), so any alleged threat on their part cannot be credible.

In short, what Plaintiffs are asking the Court to do is assume that section 253.094(b) bars conduct that it does not bar, and then assume that Cook, in his official capacity, and the City have the power to enforce that statute, which they do not, and then decide whether this misconstrued statute will be unconstitutionally enforced by parties who cannot enforce it. This is precisely what the Constitution forbids—an "entangling .... in abstract disagreements." *See Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 72, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (O'Connor, J., concurring) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Accordingly, the Court holds that it does not have before it a justiciable case or controversy.

## I. BACKGROUND

The Court takes the following facts from Plaintiffs' Second Amended Complaint, as is appropriate at this stage of the proceedings. Plaintiffs Jesus Chapel and Warren Hoyt ("Hoyt") are a local church and pastor, respectively. Second Am. Compl. ("Complaint" or "Second Amended Complaint") ¶¶ 12–13, ECF No. 24. Plaintiffs seek to circulate petitions for a recall election of City of El Paso Mayor John Cook ("Cook" or "the Mayor"), Representative Steve Ortega ("Ortega"), and Representative Susie Byrd ("Byrd").[1] Compl. ¶ 40. Neither Plaintiffs nor Defendants allege that Plaintiffs have in fact circulated recall petitions. Rather, Plaintiffs claim to have refrained from circulating petitions because they fear that Defendants will bring criminal and civil actions against them. See Compl. ¶¶ 5–4, 43–44.

As justification for this fear, Plaintiffs allege that the City of El Paso (the "City"), Cook, and District Attorney Jaime Esparza ("Esparza") are "enforcing Texas Election Code § 253.094 to prohibit churches from circulating petitions to hold recall elections." Compl. ¶¶ 1, 20. Specifically, Plaintiffs claim that Cook repeatedly and publicly stated that he has the ability to enforce the Election Code, and that he plans to enforce the Election Code against Plaintiffs "in an attempt to prohibit a recall election." Compl. ¶¶ 22–34. Plaintiffs further claim that the City has refused to

"disavow" any of Cook's statements. Compl. ¶¶ 29–30. Additionally, Plaintiffs explain that Hoyt and "various church members" were forced to retain a lawyer and invoke the Fifth Amendment after being called as witnesses in *Cook v. Tom Brown Ministries*, a state court case. Compl. ¶ 45.

In addition to the City and Cook, Plaintiffs also claim that Esparza "interprets the Election Code to prohibit churches and their members from circulating petitions to hold recall elections." Compl. ¶¶ 36, 38. Esparza has allegedly commenced a criminal investigation of other area churches and individuals "who he suspects of violating the Election Code, and has subpoenaed the City Clerk for copies of the recall petitions." Compl. ¶¶ 36, 38.

Plaintiffs have also named Texas Attorney General Greg Abbott ("Abbott") in this suit; however, Plaintiffs' Complaint does not allege that Abbott has actively interpreted or enforced the Election Code in any way. See generally Compl.

On November 17, 2011, Plaintiffs filed a lawsuit against the City and Abbott, in his official capacity. See Verified Compl., ECF No. 1. Plaintiffs amended their complaint on December 23, 2011, and again on March 19, 2012, to add claims, facts, and defendants, including Cook and Esparza. See generally First Am. Compl., ECF No. 12; Compl. The operative Complaint asserts claims under 42 U.S.C. § 1983 based on various violations of the First Amend-

---

1. In order to recall an elected official in El Paso, a citizen must circulate and file a petition for recall with the City Clerk within sixty days of the filing of a notice of intent with the City Clerk. El Paso, Tex., Ordinance 8066 (June 5, 1984) [hereinafter "Ordinance 8066"]; see Matter of Waller Creek, Ltd., 867 F.2d 228, 238 n. 14 (5th Cir.1989) (stating that federal courts in the Fifth Circuit may take judicial notice of municipal ordinances). The petition must be signed by the number of registered voters equal to at least twenty per-

cent of the number of votes cast in the election of the officer whose recall is sought. See Ordinance 8066. If the petition is sufficient, it will be submitted to the City Council. Id. The City Council will schedule a recall election on the next permitted election date if the officer whose recall is sought fails to resign at that time. Id. If the officer is successfully recalled, another election will be held pursuant to sections 201.051, 201.052 of the Texas Election Code. See id.

ment and Fourteenth Amendment of the United States Constitution, and violations of the Texas Constitution.[2] In particular, Plaintiffs allege that section 253.094(b)[3] of the Election Code violates Plaintiffs' constitutional rights of freedom of speech, freedom of religion, due process, and equal protection.[4] Compl. ¶¶ 1, 18–20, 57.

In the Motions to Dismiss, Defendants argue the Court should dismiss the Complaint based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Abbott Mot.; Esparza Mot.; Cook Mot.; City Mot. Defendants also argue that the Court should abstain under the doctrine of *Younger* abstention. Abbott Mot. 4–6; Esparza Mot. ¶ 23; Cook Mot. 3–4; City Mot. 2–4.

2. Specifically, Plaintiff alleges violations of the Free Speech Clause of the First Amendment of the United States Constitution and Article I section 8 of the Texas Constitution; violations of the Free Exercise Clause of the First Amendment of the United States Constitution and Article I section 6 of the Texas Constitution; violation of the right to freedom of association guaranteed by the First Amendment of the United States Constitution and Article I section 8 of the Texas Constitution; violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I of the Texas Constitution; violation of the right to petition the government for redress guaranteed by the First Amendment to the United States Constitution and Article I of the Texas Constitution; Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I of the Texas Constitution; and First Amendment retaliation. Compl. ¶¶ 52–91.

3. This statute provides: "A corporation or labor organization may not make a political contribution in connection with a recall election, including the circulation and submission of a petition to call an election." Tex. Elec. Code Ann. § 253.094(b); *see United States v. Schmitt,* 748 F.2d 249, 255–56 (5th Cir.1984) (holding federal courts are bound to take judicial notice of state statutes). Plaintiffs also allege that Defendants are unlawfully enforcing section 253.003, which provides the penalties for violations of section 253.094(b). Compl. ¶ 4. Section 253.003 provides that the unlawful making or accepting of a political contribution is a third degree felony if the contribution is made in violation of Subchapter D, which includes section 253.094. Tex. Elec. Code Ann. § 253.003.

4. Plaintiffs also claim Defendants are enforcing section 253.031 of the Texas Election Code against them in an unconstitutional manner. Compl. ¶ 4. Section 253.031 provides in relevant part:

> A political committee may not knowingly accept political contributions totaling more than $500 or make or authorize political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect.... A political committee may not knowingly make or authorize a campaign contribution or campaign expenditure supporting or opposing a candidate for an office specified by Section 252.005(1) in a primary or general election unless the committee's campaign treasurer appointment has been filed not later than the 30th day before the appropriate election day.

Tex. Elec. Code Ann. § 253.031. Its enforcement provision, section 253.005, make it a class A misdemeanor to make or authorize a political expenditure from an unlawful political contribution. *Id.* § 253.005.

Section 253.031 appears inapplicable to this case. Plaintiffs do not allege any facts regarding the existence of a political committee. There is no mention in the Complaint of political contributions totaling more than $ 500, nor are there any assertions regarding a campaign treasurer. Thus, section 253.031 seems utterly irrelevant, considering the facts in the Complaint. Although the Court must take well-pleaded facts as true, the statement that section 253.031 is being unconstitutionally enforced against Plaintiffs is a bare, conclusory assertion, not a well-pleaded fact. Consequently, it is not entitled to a presumption of truth. *See Ashcroft v. Iqbal,* 556 U.S. 662, 680–81, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court therefore does not construe the Complaint to assert any claims involving section 253.031.

## II. DISCUSSION

Defendants claim the Court should dismiss Plaintiffs' Complaint in its entirety for three reasons. First, Defendants bring a motion to dismiss under Rule 12(b)(1), claiming that Plaintiffs lack standing to assert their claims.[5] Abbott Mot. 3–4; Esparza Mot. ¶¶ 8–14.; Cook Mot. 1–2; City Mot. 10–11. Next, Defendants argue that the Court should abstain under the doctrine of *Younger* abstention. Abbott Mot. 4–6; Esparza Mot. ¶ 23; Cook Mot. 3–4; City Mot. 2–4. Finally, Defendants bring a motion to dismiss under Rule 12(b)(6), arguing both that Plaintiffs have failed to state a claim for relief and that Esparza, Abbott, and Cook are immune from suit. Abbott Mot. 3; Esparza Mot. ¶¶ 15–16; Cook Mot. 5–6; City Mot. 5–9.

Plaintiffs have filed a motion for preliminary injunction seeking an injunction to prevent Defendants from enforcing the Election Code as applied to Plaintiffs' speech, and a declaration that the Election Code is facially unconstitutional. PI Mot. 10.

As courts must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge, the Court addresses it first. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994).

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

#### 1. Standard

Federal courts are courts of limited jurisdiction. *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir.2004). Without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *Id.* A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed.R.Civ.P. 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge because a court must have jurisdiction before determining the validity of a claim. *Moran*, 27 F.3d at 172. In ruling upon such motion, a district court is free to weigh the evidence and satisfy itself as to its power over the case. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir.1992). In making this ruling, the district court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. *Barrera–Montenegro v. USA and Drug Enforcement Admin.*, 74 F.3d 657, 659 (5th Cir.1996).

"[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" when jurisdictional facts are controverted. *Id.* Where the motion to dismiss is based on the complaint alone, as is the case here, a court is required to merely decide whether the allegations in the complaint, presumed to be true, sufficiently state a basis for subject matter jurisdic-

---

5. City and Cook, in his official capacity as Mayor, challenge Plaintiff's standing under Rule 12(b)(6). City Mot. 10–11. "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011). Here, however, the City and the Mayor only challenge constitutional standing. City Mot. 10–11. Therefore, the Court construes the City and the Mayor's standing argument as a motion to dismiss under Rule 12(b)(1).

tion. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981).

### 2. Analysis

Defendants argue that Plaintiffs' lack of standing divests the Court of subject matter jurisdiction. Abbott Mot. 3–4; Esparza Mot. ¶¶ 8–14.; Cook Mot. 1–2; City Mot. 10–11. In particular, Esparza claims that Plaintiffs have not shown they suffered an injury, while Abbott, the City, and Cook claim that Plaintiffs have not shown a causal link between any official action and their alleged injury. Abbot Mot. 3–4; Esparza Mot. ¶¶ 8–14; Cook Mot. 1–2; City Mot. 10–11. Plaintiffs, on the other hand, claim they have standing to assert a pre-enforcement statutory challenge, or in the alternative, that they have standing under the overbreadth doctrine. Resp. 4–12.

### a. The parties

Before discussing justiciability, the Court finds it prudent to clarify the capacities in which the Defendants have been sued, since "[t]he court must assess the plaintiff's standing … against each defendant." *Coastal Habitat Alliance v. Patterson,* 601 F.Supp.2d 868, 877 (W.D.Tex. 2008) (citing *James v. City of Dall.,* 254 F.3d 551, 563 (5th Cir.2001)). Plaintiffs sue Abbott, Esparza, and Cook in their official capacities. *See generally* Compl. An official capacity suit is simply "another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office…. As such, it is no different from a suit against the [government entity] itself." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (internal citations omitted). As a result, the Court treats Plaintiffs' suit against Esparza and Abbott as a suit against the state of Texas. *See McKinley v. Abbott,* 643 F.3d 403, 405–406 (5th Cir.2011) (explaining suit against Attorney General of Texas was suit against the state itself); *Quinn v. Roach,* 326 Fed. Appx. 280, 292 (5th Cir.2009) (citing *Esteves v. Brock,* 106 F.3d 674, 678 (5th Cir.1997); *Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir.1995); *Echols v. Parker,* 909 F.2d 795, 801 (5th Cir.1990)) ("[D]istrict attorneys … in Texas are agents of the state when acting in their prosecutorial capacities."). Also, the Court treats Plaintiffs' suit against Cook, in his official capacity, as a suit against the City. *See Graham,* 473 U.S. at 166, 105 S.Ct. 3099. As such, the Court's references to the City include Cook, in his official capacity.

In addition to bringing official capacity suits, Plaintiffs' Complaint names Cook in "his … individual capacity as Mayor of the City of El Paso, Texas and as a private citizen." *See* Compl. "[Individual]-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham,* 473 U.S. at 166, 105 S.Ct. 3099. In contrast, private capacity suits involve actions by officers "pursuing private aims and not acting by virtue of state authority [or] under color of law." *See Garner v. Wallace,* 139 F.Supp.2d 801, 804 (E.D.Tex. 2001) (citing *Brown v. Miller,* 631 F.2d 408, 411 (5th Cir.1980)). By bringing suit against Cook in both his individual capacity and as a private citizen, Plaintiffs allege that Cook took unconstitutional action against them both under color of law and while "pursuing private aims." *See* Compl.; *Garner,* 139 F.Supp.2d at 804. Thus, the Court considers Plaintiffs' claims to be against Cook as an officer of the City

acting under color of law, and as a private citizen. In sum, Plaintiffs sue Cook in three capacities: his official capacity as Mayor, his individual capacity as Mayor, and his private capacity. Plaintiffs sue Abbott and Esparza in their official capacities only.

### b. Justiciability

Having clarified the capacities in which Defendants have been sued, the Court now turns to justiciability. Article III of the United States Constitution restricts a court's jurisdiction to the decision of "cases" or "controversies." U.S. Const. art. III; *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). Courts have developed various justiciability doctrines, such as standing and ripeness, to determine when a case or controversy—and therefore, jurisdiction—exists. *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Sample v. Morrison,* 406 F.3d 310, 312 (5th Cir.2005). In pre-enforcement challenges to statutes, standing often overlaps with ripeness. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128 n. 8, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ("[S]tanding and ripeness boil down to the same question in this case."); *see also Miss. State Democratic Party v. Barbour,* 529 F.3d 538, 544–45 (5th Cir.2008) ("The standing question 'bears close affinity to questions of ripeness.'" (quoting *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct.

2197, 45 L.Ed.2d 343 (1975)); *Texas v. United States,* 497 F.3d 491, 496 (5th Cir. 2007) ("[T]he doctrines often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury."). The Court therefore considers both doctrines in evaluating its jurisdiction.[6]

Standing is an essential part of the case or controversy requirement in Article III.[7] *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 733, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). "The 'essence' of standing is 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 542 (5th Cir.2008) (quoting *Warth,* 422 U.S. at 498, 95 S.Ct. 2197). Generally speaking, a "conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic case or controversy within the meaning of Article III." *Diamond v. Charles,* 476 U.S. 54, 64, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). Nevertheless, courts require a plaintiff to establish constitutional standing by showing that they (1) personally suffered an actual or threatened injury; (2) the injury is fairly traceable to the defendant's illegal conduct; and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct.

---

**6.** As part of their requested relief, Plaintiffs seek a declaratory judgment. *See generally* Compl. To be thorough, the Court notes that the Article III case or controversy requirements such as standing and ripeness apply to actions under the Declaratory Judgments Act, 28 U.S.C. § 2201. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

**7.** Since constitutional standing is a jurisdictional requirement for federal courts, the Court applies the same justiciability analysis to Plaintiffs federal constitutional and state

constitutional claims. *See Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1251–53 (5th Cir.1995) (analyzing state constitutional equal protection claims under the principles of Article III standing); *MD II Entm't, Inc. v. City of Dall.,* 28 F.3d 492, 497–498 (5th Cir.1994) (applying Article III standing analysis to state-law sex discrimination claim); *Arnett v. Strayhorn,* 515 F.Supp.2d 699 (W.D.Tex.2006) (analyzing only Article III standing for both federal constitutional and state constitutional claims).

2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

In addition to these constitutional standing requirements, a plaintiff's claim also must conform to certain prudential principles. *Valley Forge*, 454 U.S. at 474, 102 S.Ct. 752. Relevant to this case is the principle that a plaintiff can only assert his own rights and interests; he general may not assert those of a third party. *E.g., Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

Like standing, "ripeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir.2002). Whether a controversy is "ripe" for judicial resolution has a "twofold aspect, requiring [a court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 814, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The fundamental premise behind the ripeness doctrine "is to prevent the courts ... from entangling themselves in abstract disagreements," when those disagreements are dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reno*, 509 U.S. at 72, 113 S.Ct. 2485 (O'Connor, J., concurring) (quoting *Union Carbide Agric. Prods. Co.*, 473 U.S. at 580–81, 105 S.Ct. 3325). In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until a case or controversy is presented in " 'clean-cut and concrete form.' " *Renne v. Geary*, 501 U.S. 312, 322, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)

(quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947)).

The party invoking federal jurisdiction bears the burden of establishing the elements of both standing and ripeness. *See Renne*, 501 U.S. at 316, 111 S.Ct. 2331 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." (internal quotations omitted)). Thus, Plaintiffs bear the burden of demonstrating that their claims are justiciable. *Id.* In examining justiciability, the Court is mindful that in both the standing and ripeness inquiries, the ultimate question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *See Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) (discussing justiciability in the context of a declaratory judgment). Because both standing and ripeness require an injury that is "imminent rather than conjectural or hypothetical," any analysis regarding whether Plaintiffs have alleged such an injury necessarily pertains to both standing and ripeness in this case. *See Miss. State Democratic Party*, 529 F.3d at 545 (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir.2006)) ("Ripeness often overlaps with standing, 'most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical.' "); *Russell v. Choicepoint Servs., Inc.*, 302 F.Supp.2d 654, 663 (E.D.La.2004) ("[B]oth standing and ripeness analyses look to the existence of actual injury to the plaintiff caused by the alleged wrong, [and therefore] they overlap to some degree and often collapse into each other.").

### c. Injury

Esparza argues that Plaintiffs have suffered no injury and that their alleged fear of prosecution is conjectural, because Plaintiffs have not pleaded that they wish to engage in a prohibited activity. Esparza Mot. ¶ 14. According to Esparza, section 253.094(b) is not a blanket prohibition on the corporate circulation and submission of recall petitions. *Id.* ¶ 13. Instead, it more narrowly prohibits corporate circulation and submission of recall petitions only when such support constitutes a "political contribution" under the Election Code. *Id.* ¶ 13 (citing Tex. Elec. Code Ann. § 251.001(3)). Esparza argues that Plaintiffs have not pleaded any facts showing that they wish to engage in any activity that could be termed a "political contribution." *Id.* ¶ 14. Therefore, Esparza claims Plaintiffs' fear cannot be based on a desire to act in violation of a criminal statute, "but rather on the irrational expectation that the District Attorney will prosecute them for behavior that is not proscribed at all." [8] *Id.*

Plaintiffs claim they have standing to assert a pre-enforcement statutory challenge, or in the alternative, that they have standing under the doctrine of overbreadth. Resp. 4–12. They argue that despite Esparza's claimed interpretation of the Election Code, Esparza has nevertheless commenced criminal proceedings against churches suspected of circulating recall petitions. Resp. 7. Plaintiffs claim these "ongoing state criminal proceedings" cause them to fear prosecution and provide them with a sufficient injury to bring a pre-enforcement challenge to section 253.094(b). Resp. 6–8. In the alternative, Plaintiffs claim that they have standing to assert the interests of third parties under the overbreadth doctrine. Resp. 12.

An injury for standing purposes must be (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Similarly, the ripeness inquiry focuses on "whether an injury that has not yet occurred is sufficiently likely to happen." *Pearson v. Holder,* 624 F.3d 682, 684 (5th Cir.2010) (quoting *Chevron U.S.A., Inc. v. Traillour Oil Co.,* 987 F.2d 1138, 1153 (5th Cir.1993)); *Miss. State Democratic Party,* 529 F.3d at 545 (quoting *Brooklyn Legal Servs.,* 462 F.3d at 225) (stating that ripeness requires the injury be imminent rather than conjectural). Consequently, the justiciability inquiry "turns on whether Plaintiffs' alleged injury is actual or imminent rather than conjectural or hypothetical." *See Miss. State Democratic Party,* 529 F.3d at 545.

### i. Credible threat

When a plaintiff seeks to engage in constitutionally protected activity that is proscribed by statute, it is well-settled that a plaintiff does not need to first violate the statute and expose himself to arrest in order to establish an injury for standing purposes.[9] *E.g., Babbitt v. United Farm*

---

**8.** Abbott advanced a similar argument in his first motion to dismiss, which he did not revive in his operative motion to dismiss. Def. Greg Abbott's Mot. to Dismiss 4–5, ECF No. 14. Abbott argued that "not every payment of money by a corporation in connection with political activity is prohibited by Section 253.094. For example, the statute does not bar corporations from making 'political expenditures.'" *Id.* at 4. Abbott argued that Plaintiffs' claim must be dismissed because "Plaintiffs fail to plead any facts to demonstrate that the conduct in which they wish to engage even constitutes a 'political contribution' barred by Section 253.094(b)." *Id.* Esparza adopts this argument in his motion to dismiss. Esparza Mot. ¶ 12.

**9.** Part of this rationale rests on the idea that if a plaintiff waits until the state enforces the law, the plaintiff may lose his right to challenge the law in federal court under the doc-

*Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Indeed, courts are hesitant to place individuals in situations where they must choose between violating the law and foregoing constitutionally protected activity. *E.g., Med-Immune, Inc.*, 549 U.S. at 128–29, 127 S.Ct. 764. Consequently, "it is not necessary that a petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).[10]

■ To engage in a pre-enforcement review of a statute, as is the case here, a plaintiff must show an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and ... a credible threat of prosecution thereunder." *Babbitt*, 442 U.S. at 297–99, 99 S.Ct. 2301;

*Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir.2006). In determining whether a threat is credible or speculative, the Fifth Circuit "look[s] to the practical likelihood that a controversy will become real." *Shields*, 289 F.3d at 835 (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir.2000)).

In all cases, however, a plaintiff must intend to engage in statutorily proscribed activity. *See Babbitt*, 442 U.S. at 297–99, 99 S.Ct. 2301. This is because "failure to allege an intention [to engage in activities prohibited by statute] and to support such intention with objective evidence leaves it entirely speculative whether the plaintiffs will face any actual or imminent injury from future prosecution." *Phelps v. Hamilton*, 122 F.3d 1309, 1328 (10th Cir.1997). The Fifth Circuit has therefore held that plaintiffs must demonstrate a "serious" intention to engage in prohibited conduct. *Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 209 (5th Cir.2011). For

---

trine of *Younger* abstention. *Peyote Way Church of God, Inc. v. Smith*, 742 F.2d 193, 198–99 (5th Cir.1984) (citing *Younger v. Harris*, 401 U.S. 37, 49, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). A plaintiff in such a situation "may invoke federal jurisdiction only if he can move through the narrow door between prematurity and exclusive state jurisdiction." *KVUE, Inc. v. Moore*, 709 F.2d 922, 928 (5th Cir.1983).

10. Indeed, Plaintiffs do not necessarily have to allege any affirmative threat of enforcement. Especially in the First Amendment context, courts may assume that governmental officials plan to enforce a challenged statute as long as the government has not "disavowed" any intention of invoking the statute's penalties. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298–99, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *see also Virginia v. Am. Booksellers Assoc., Inc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (assuming that the State was willing to enforce the law against the plaintiffs in the absence of an express declaration that it would not be enforced.); *Roark & Hardee LP*

*v. City of Austin*, 522 F.3d 533, 539 (5th Cir.2008) ("[N]owhere in the record does the City suggest that it will refrain from enforcing the 'necessary steps' provision against Plaintiffs."). The Court of Appeals for the District of Columbia has gone so far as to find a credible threat of enforcement from the "conventional background expectation that the government will enforce the law." *Act Now to Stop War & End Racism Coal. v. Dist. of Columbia*, 589 F.3d 433, 435 (D.C.Cir.2009) (quoting *Seegars v. Gonzales*, 396 F.3d 1248 (D.C.Cir.2005)). The key to sustaining this inference, however, is the fact that a statute applies and directly operates against a plaintiff. *See, e.g., Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Roark & Hardee LP*, 522 F.3d at 539; *Aid for Women v. Foulston*, 441 F.3d 1101, 1110–11 (10th Cir.2006); *Love Church v. City of Evanston*, 671 F.Supp. 508, 511 (N.D.Ill.1987) (citing *Buckley v. Valeo*, 424 U.S. 1, 11–12 & n. 10, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Am.Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 326 (7th Cir.1985)) ("Because plaintiffs' interests are directly affected by the ordinance, they have standing to attack it.").

example, the Fifth Circuit denied standing to plaintiff charities in *National Federation of the Blind of Texas* when the charities had not alleged sufficient facts for the Court to determine whether the charities intended to engage in the specific conduct prohibited by the challenged statute. *Id.; see also Glenn v. Holder*, 738 F.Supp.2d 718 (E.D.Mich.2010) (dismissing case for lack of standing when plaintiffs had not alleged that the activity they sought to engage in was proscribed by statute). Similarly, in *International Tape Manufacturers Association v. Gerstein*, the court held that an association of recording tape manufacturers did not have standing to challenge a Florida law because the complaint "fail[ed] to describe the nature and location of the members' activities in sufficient detail to show that Florida law will ever govern them." 494 F.2d 25, 29 (5th Cir.1974); *see also Texans Against Censorship, Inc. v. State Bar of Tex.*, 888 F.Supp. 1328, 1340 (E.D.Tex.1995) (holding certain plaintiffs had no standing because they had "not indicated any credible intention of engaging in conduct that would be proscribed by these particular provisions, [and therefore] their claims that these rules violate the Constitution amount[ed] to only generalized grievances.").

The weight courts give properly pleaded allegations of intent to engage in prohibited conduct demonstrates the importance of such allegations. Courts occasionally infer a credible threat of enforcement as long as a challenged statute *does* apply to the intended conduct. *Roark & Hardee LP*, 522 F.3d at 539; *Aid for Women v. Foulston*, 441 F.3d 1101, 1110–11 (10th Cir.2006) (finding the plaintiffs had standing because they were "covered" by the statute, thus exposing them to prosecution if they did, in fact, fail to comply with it.). In *Roark & Hardee LP v. City of Austin*, bar owners brought a vagueness challenge to an ordinance that made it a misdemeanor to fail to take "necessary steps" to prevent people from smoking in their bars. 522 F.3d at 539. None of the bar owners had been prosecuted under the ordinance at the time the suit was filed. *Id.* at 543. However, the Fifth Circuit appeared to find a credible threat of enforcement simply from the fact that, if enforced, the ordinance would have operated on plaintiffs.[11] *Id.* at 542–43.

Before delving into the particulars of the instant case, the Court notes that the case's procedural posture complicates the task of determining whether the standing requirements are satisfied. On a motion to dismiss under Rule 12(b)(1), the Court must accept as true all well-pleaded allegations in the complaint, and view them in a light most favorable to the plaintiff. *Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed.Appx. 44, 46 (5th Cir.2010) (citing *Warth*, 422 U.S. 490, 501, 95 S.Ct. 2197 (1975)). Further, the Court need not accept as true conclusory statements or "legal conclusions masquerading as factual conclusions." *Wells v. Ali*, 304 Fed.Appx. 292, 293 (5th Cir.2008) (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). Consequently, a complaint must clearly allege standing. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages

**11.** Notably, the court commented "the *threat* of enforcement became real" when some Plaintiffs were charged under the ordinance during the pendency of the suit, thus implying a credible threat existed prior to the indictments. *See Roark & Hardee LP*, 522 F.3d at 543.

of the litigation."); *W. Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981) (citing *Jenkins v. McKeithen,* 395 U.S. 411, 422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)). After all, the Court "cannot construe the complaint so liberally as to extend our jurisdiction beyond its constitutional limits." *Watt,* 643 F.2d at 624; *see also Raines v. Byrd,* 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ("One element of the case-or-controversy requirement is that appellees, *based on their complaint,* must establish that they have standing to sue." (emphasis added)).

As such, standing inquiries typically do not involve inquiry into the underlying merits of a lawsuit. *Warth,* 422 U.S. at 500, 95 S.Ct. 2197. Nevertheless, courts may find it necessary to address merits and construe contested statutes in various situations, including discussions of standing and ripeness. *Von Aulock v. Smith,* 720 F.2d 176, 185 (D.C.Cir.1983) (citing *Warth,* 422 U.S. at 500, 95 S.Ct. 2197); *see Am. Library Ass'n v. Barr,* 956 F.2d 1178, 1181–85 (D.C.Cir.1992) (discussing the legislative history and policy regarding a contested statute in analyzing justiciability).

Here, the parties primarily contest the scope and application of section 253.094(b). *See* Esparza Mot. ¶¶ 12–14; Resp. 2; *see also* City's Resp. to Pls.' Expedited Mot. for Prelim. Inj. ("City's PI Response") ¶ 17, ECF No. 21 ("[T]he conduct Plaintiffs seek to engage in constitutes criminal activities under the Texas Election Code."); Pls.' Reply in Support of Mot. for Prelim. Inj. ("Plaintiffs' PI Reply") 1–3, ECF No. 25 (emphasizing that it is unclear what activity the statute proscribes). To determine whether there is a credible threat of enforcement, the Court must determine whether Plaintiffs have pleaded (1) their intended course of conduct—namely, the circulation and submission of recall petitions—is arguably affected with

a constitutional interest, (2) that such conduct is proscribed by section 253.094(b); and (3) there is a credible threat of prosecution for engaging in the conduct. *See Babbitt,* 442 U.S. at 297–99, 99 S.Ct. 2301.

### A. Affected with a constitutional interest

Defendants do not contest that Plaintiffs' proposed conduct is affected by a constitutional interest. Nevertheless, because of the multitude of constitutional claims that Plaintiffs assert, the Court addresses this prong. Plaintiffs claim injuries to their First Amendment speech rights, as well as their constitutional rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, and the Free Exercise Clause of the First Amendment. *See* Compl. ¶¶ 62–86. The credible threat doctrine applies to pre-enforcement suits asserting violations of all of these constitutional rights. *E.g., Bankshot Billiards, Inc. v. City of Ocala,* 634 F.3d 1340, 1350 (11th Cir.2011) (utilizing *Babbitt* to analyze standing to assert a pre-enforcement due process challenge); *Am. Charities for Reasonable Fundraising Regulation v. Pinellas Cnty.,* 221 F.3d 1211, 1214–15 (11th Cir.2000) (analyzing standing to bring challenges under the Due Process Clause); *Schmidling v. City of Chicago,* 1 F.3d 494, 494 (7th Cir. 1993). (same); *Love Church v. City of Evanston,* 671 F.Supp. 508, 511 (N.D.Ill.1987) (relying on credible threat cases to evaluate plaintiffs' Free Exercise Clause and Equal Protection Clause claims). *But see Society of Separationists, Inc. v. Herman,* 959 F.2d 1283, 1285 (5th Cir.1992) (using the similar "fear of harm" pre-enforcement challenge cases developed under *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), to analyze Free Exercise Clause claim).

It is well-established that "[p]etition circulation ... is 'core political speech,' be-

cause it involves 'interactive communication concerning political change.' ... First Amendment protection for such interaction, we agreed, is 'at is zenith.'" *Buckley v. ACLF*, 525 U.S. 182, 186–87, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). It is less clear whether Plaintiffs' activity is affected with rights under the Due Process Clause, Equal Protection Clause, or the Free Exercise Clause. However, because the second and third prongs—proscribed by statute and credible threat of prosecution—are dispositive in this case, the Court assumes without deciding that Plaintiffs' activity is affected with a constitutional interest encompassing such rights.

### B. Proscribed by statute

■ In deciding whether section 253.094(b) proscribes Plaintiffs' proposed activity, the Court applies principles of Texas law.[12] *See United States v. Cobb*, 975 F.2d 152, 156 (5th Cir.1992) (stating district courts are "obligated to interpret ... [a] Texas statute as a Texas court would have interpreted it."). In Texas, courts interpret statutes as a matter of law. *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 357 (Tex.2000). The primary goal of statutory construction is to determine the legislature's intent. *Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). The plain meaning of the statute's words and phras-

es is the strongest indicator of legislative intent. *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002). Essentially, courts construe words and phrases according to their legislative definitions, if any, and according to the rules of grammar and common usage. Tex. Govt. Code Ann. § 311.011.

Section 253.094(b) states:

A corporation or labor organization may not make a political contribution in connection with a recall election, including the circulation and submission of a petition to call an election.

Tex. Elec. Code Ann. § 253.094(b).

The plain meaning of section 253.094(b) reveals that the statute limits corporate participation in recall efforts by prohibiting corporations from making political contributions supporting recall elections, such contributions include the circulation and submission of recall petitions. Indeed, the Texas legislature intended to prohibit only corporate political *contributions*, and not other types of campaign finance activity.

According to the Election Code, a "political contribution" includes "a [direct or indirect transfer of money, good, service, or any other thing of value] to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." [13] Tex. Elec.

---

**12.** Plaintiffs also allege in the Complaint that section 253.031 is being unconstitutionally applied against them to chill their speech, and that it is unconstitutional on its face. Compl. ¶¶ 4–6. However, Plaintiffs neither assert facts in their Complaint, nor make arguments in their briefs that this statute has been enforced or threatened to be enforced against them in any manner. *See generally* Compl.; Resp. Thus, the Court finds that Plaintiffs' allegation that section 253.031 is being unconstitutionally applied against them is a conclusory assertion that need not be accepted as true. *See Iqbal*, 556 U.S. at 680–81, 129 S.Ct. 1937 (holding that on a motion to dismiss,

courts need not accept as true "bare assertions"). Given the absence of facts asserting either that Plaintiffs intend to violate this statute, or there is a credible threat of prosecution under the statute, Plaintiffs have not properly asserted a justiciable claim involving section 253.031. *See Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 209 (5th Cir.2011); *Phelps v. Hamilton*, 122 F.3d 1309, 1328 (10th Cir.1997); *Glenn v. Holder*, 738 F.Supp.2d 718 (E.D.Mich.2010).

**13.** A political contribution encompasses the term "campaign contribution." Tex. Elec. Code Ann. § 251.001(5). The Election Code

Code Ann. § 251.001(2), (3), (5). Whether a particular activity constitutes a political contribution depends on the specific facts of the situation. *See* Tex. Elec. Code Ann. § 251.001(5); Op. Tex. Ethics Comm'n No. 500 ("[W]hether the corporate expenditure constitutes an impermissible campaign contribution to the candidate depends on the specific facts.").[14]

The Texas Election Code distinguishes political contributions from political expenditures. *See* Tex. Elec. Code Ann. § 251.001 et seq.; *Ex Parte Ellis*, 279 S.W.3d 1, 7–9 (Tex.App.2008). A political expenditure is "[a payment of money or any other thing of value] by any person in connection with a campaign for an elective office or on a measure."[15] Tex. Elec. Code Ann. § 251.001(6), (7), (10). Both political expenditures and political contributions concern payments or transfers made "in connection with a campaign for elective office or on a measure." *Id.* § 251.001(3), (7). However, a political contribution requires contributions be made "to a candidate or political committee" and

be given with the "intent that it be used in connection with a campaign for elective office or on a measure." *Id.* § 251.001(3). Thus, contributions and expenditures are distinguishable based on who receives the contribution, and whether the contribution was given with the intent that it be used for a campaign or on a measure.[16]

The Texas legislature recently amended section 253.094(b) to comply with the Supreme Court's ruling in *Citizens United v. Federal Election Commission,* 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). Prior to 2011, section 253.094(b) prohibited both corporate political expenditures and corporate political contributions to recall elections and petition circulation. Tex. Elec. Code Ann. § 253.094(b) (Vernons 2010). However, after *Citizens United* held that corporate expenditures were a protected form of speech that could not be restricted, the Texas legislature amended section 253.094(b) to remove the reference to political expenditures. House Committee on Elections, Bill Analysis, Tex. H.B. 2359, 82d Leg., R.S. (2011); *Citizens Unit-*

---

defines a campaign contribution as: "a [direct or indirect transfer of money, good, service, or any other thing of value] to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." *Id.* § 251.001(2), (3). The Court uses the definition of campaign contribution as the definition of political contribution.

**14.** The Texas Ethics Commission is a state government agency that administers and enforces, *inter alia,* Title 15 of the Texas Election Code. Tex. Govt. Code Ann. § 571.061.

**15.** A *political expenditure* encompasses the term "campaign expenditure." Tex. Elec. Code Ann. § 251.001(10). A campaign expenditure is: "[a payment of money or any other thing of value] by any person in connection with a campaign for an elective office or on a measure." *Id.* § 251.001(6), (7). The Court uses the definition of campaign expen-

diture as the definition of political expenditure.

**16.** The most thorough judicial discussion of the difference between campaign expenditures and contributions in Texas, *Ex Parte Ellis,* draws a similar conclusion. 279 S.W.3d 1, 8–9 (Tex.App.2008). The *Ellis* court drew a "sharp distinction" between contributions and expenditures. *See Ex Parte Ellis,* 309 S.W.3d 71, 75 (Tex.Crim.App.2010). *Ellis* stated:

> [B]oth campaign contributions and campaign expenditures are characterized by a payment or transfer of money or other thing of value with campaign contributions being distinguished by (1) the nature of the recipient (a candidate or political committee), and (2) the contributor's intent that the recipient of the contribution use it in connection with an election (as opposed to its simply being made "in connection with an election").

*Ellis,* 279 S.W.3d at 8–9.

*ed,* 130 S.Ct. at 911–13. This amendment specifically addressed the legislature's concern that section 253.094(b)'s prohibition on political expenditures was unconstitutional under *Citizens United.* Hopson, Bill Analysis, H.B. 2359 ("H.B. 2359 seeks to address the prohibition on direct campaign expenditures by removing certain references to political expenditures in the Texas Election Code."). Indeed, the amendment was seemingly prompted by a Texas Ethics Commission opinion stating that "the Texas Ethics Commission cannot enforce section[ ] 253.094 ... of the Election Code to prohibit a corporation or labor organization from making a direct campaign expenditure." Op. Tex. Ethics Comm'n No. 489. This amendment suggests that the Texas Legislature intended to prohibit only corporate petition circulation that constitutes political contributions, rather than prohibit all corporate petition circulation by automatically deeming all such activity to be a political contribution.

█ Because section 253.094(b) only prohibits the circulation of recall petitions when such circulation constitutes a "political contribution," the Court holds that Plaintiffs have not alleged that they wish to engage in activity that is proscribed by statute. Plaintiffs assert that they "desire to seek the recall of John Cook ... Representative Steve Ortega and Representative Susie Byrd" as well as future elected officials. Compl. ¶¶ 40–41. They seek to do so by circulating petitions to hold recall elections. Compl. ¶¶ 1, 6, 20, 43–44. However, Plaintiffs do not allege what they seek to contribute, how they want to contribute, or to whom they want to contribute. The Court has no facts before it that relate to "(1) the nature of [Plaintiffs' intended] recipient (a candidate or political committee), [or] (2) [Plaintiffs'] intent that the recipient of the contribution use it in connection with an election (as opposed to

its simply being made 'in connection with an election')." *Ellis,* 279 S.W.3d at 8–9; *see* Tex. Elec. Code Ann. § 251.001(2), (3), (5). It is therefore impossible for the Court to discern whether Plaintiffs' proposed conduct constitutes a political contribution prohibited by section 253.094(b), rather than a political expenditure or other type of campaign finance activity. Indeed, Plaintiffs have not shown that they intend to contribute to a candidate or a political committee at all. Without this, Plaintiffs have not pleaded that they wish to engage in activity proscribed by statute.

Finally, beyond the question of whether Plaintiffs have alleged that they wish to make political contributions, Plaintiffs have also failed to allege that the statute could *ever* operate against Hoyt. *See, e.g., Nat'l Fed'n of the Blind of Tex.,* 647 F.3d at 209 (holding that to assert an injury, a plaintiff must show they have a serious interest in acting contrary to a statute). Section 253.094(b) applies to "corporation[s] or labor organization[s]" only, and does not apply to individuals. Tex. Elec. Code Ann. § 253.094(b). Hoyt is not a corporation, and thus is not subject to section 253.094(b), barring other statutory authorization. Under section 253.095 of the Texas Election Code, "[a]n officer, director, or other agent of a corporation or labor organization who commits an offense under this subchapter is punishable for the grade of offense applicable to the corporation or labor organization." *Id.* § 253.095. Here, however, Plaintiffs have not asserted Hoyt is an officer, director, or other agent of Jesus Chapel. *See generally* Compl. Indeed, Plaintiffs have asserted no facts that would allow the Court to draw the conclusion that Hoyt holds an officer, director, or agency position. The Complaint merely states that Hoyt is the pastor of Jesus Chapel. Compl. ¶ 12. Without stating that Hoyt is an officer, director, or agent of Jesus Chapel, he cannot have standing.

See *Doe v. Bolton*, 410 U.S. 179, 189, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (holding nurses, clergy, and social workers had no standing because the statute did not directly operate against them).

In sum, Plaintiffs have not alleged that the activity they wish to engage in is proscribed by statute, or that the statute could operate against Hoyt. Plaintiffs therefore cannot allege an injury sufficient to sustain a pre-enforcement challenge to the Election Code.

## C. Credible threat of enforcement

■ Even if Plaintiffs had properly pleaded that they wish to engage in an activity proscribed by statute, Plaintiffs have not adequately alleged a credible threat of enforcement. Plaintiffs attempt to show a credible threat by alleging that government officials have specifically threatened to prosecute them for circulating recall petitions, apparently regardless of whether the statute applies to their behavior. Compl. ¶¶ 22–23, 32. Plaintiffs claim "the City, through its mayor, stated publicly that it plans to bring an action to enforce the Election Code against the Plaintiffs and others if they circulate petitions to hold recall elections," and that Cook has already enforced the election code by "filing legal proceedings ... against other parties not before this Court." *See* Compl. ¶¶ 27, 32. Plaintiffs also allege that Esparza is "conducting ongoing investigations of churches and their members who he suspects of violating the Election Code." Compl. ¶ 36. Indeed, Plaintiffs claim that Esparza has subpoenaed the County Clerk to obtain copies of recall petitions that other groups have already circulated and submitted, and that Esparza "may issue [sic] the evidence collected from the grand jury investigation and subpoenas to issue indictments against those individuals and churches involved in the petition effort to recall Mayor Cook." Compl. ¶¶ 38–39.

These allegations do not establish a credible threat of enforcement because Plaintiffs have failed to claim that their proposed conduct is similar to the conduct that is the subject of Cook's lawsuit or the grand jury investigation. To illustrate, in *Schmidling v. City of Chicago*, the plaintiffs brought a Due Process Clause vagueness challenge to a city ordinance imposing a height limit on weeds. 1 F.3d at 496. The plaintiffs claimed they genuinely feared prosecution in part because the City was currently prosecuting another individual, Marie Wojciechowski, for violation of the weed ordinance. *Id.* at 496–97. The Seventh Circuit wrote:

> Although the plaintiffs claim that they and Wojciechowski engage in the same type of gardening behavior, the record is unclear regarding the similarity between her garden and those of all the plaintiffs. Also, the City cited Wojciechowski not only for having weeds on her property, but for storing bricks and lumber on her property as well. The existence of the bricks and lumber may have created some other hazard, nuisance, or health problem that motivated the City to issue the citation.

*Id.* at 498 n. 4 (internal citations omitted). Therefore, the Seventh Circuit concluded that "[e]ven though the City is prosecuting Wojciechowski under the current version of the weed ordinance, that does not necessarily mean the City will definitively prosecute the plaintiffs." *Id.* at 498. Consequently, the Court held that the plaintiffs had not alleged a credible threat of enforcement. *Id.* at 501.

In a similar case, *Doe v. Duling*, an unmarried couple in Virginia challenged the constitutionality of a Virginia law prohibiting fornication between an unmarried couple. 782 F.2d 1202, 1204 (4th Cir.1986).

The plaintiffs stated that they "have engaged in sexual intercourse in the city with unmarried members of the opposite sex," as well as cohabitation. *Id.* Although they had not been arrested or charged in connection with the statute, the plaintiffs alleged that "a pattern of current enforcement" caused them to fear prosecution and abstain from engaging in "private, consensual heterosexual activity." *Id.* at 1204–1205. However, all of the enforcement efforts described by the plaintiffs involved prostitution or public conduct, and none involved arrests for fornication in a private residence. *Id.* at 1205. Accordingly, the Fourth Circuit held that "[t]he total absence of prosecutions [for the type of activity the plaintiffs sought to engage in] establishes that [the plaintiffs] have 'no fears of prosecution except those that are imaginary or speculative.'" *Id.* at 1206 (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

Plaintiffs provide no facts or details about the legal proceeding Cook filed against third-parties or about Esparza's grand jury investigation. It is not clear what campaign activities prompted Esparza to begin his grand jury investigation, or how such activities compare to Plaintiffs' proposed conduct. Further, the Court has no idea how Plaintiffs' proposed activity is similar or distinguishable from the campaign activity that was the subject of *Cook v. Tom Brown Ministries*. *See* Compl. ¶ 45 (referring, without citation, to *Cook v. Tom Brown Ministries*). Without the facts of those other incidents, Plaintiffs have not alleged that they are sufficiently similar to Plaintiffs conduct in this case such that Plaintiffs have asserted a well-pleaded fear of prosecution. *See Schmidling*, 1 F.3d at 496; *Duling*, 782 F.2d at 1204.

Further, Cook's allegedly direct threat to enforce the Election Code against the Plaintiffs is insufficient. The Court acknowledges that it must accept as true all well-pleaded allegations in the Complaint and view them in a light most favorable to the plaintiff. *Underwriters at Lloyd's of London*, 398 Fed.Appx. at 46. However, even assuming Cook threatened prosecution, Plaintiffs have not established that this threat was *credible*, in light of the fact that Cook has no power to prosecute Election Code violators. *See R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30–31 (1st Cir.1999) (citing *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301; *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)) (holding credible threat of enforcement must be objectively reasonable); *see Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir.2001) (en banc) (holding standing requires a defendant to be able to enforce a challenged statute). Indeed, the Court is unable to locate any legal authority providing Cook with the power to enforce the Election Code. *See* Tex. Elec. Code Ann. §§ 273.001 273.004, 273.021, 273.022 (stating the attorney general and district attorney may prosecute election law offenses but not giving enforcement authority to a city mayor); Tex. Govt. Code Ann. § 571.061 (stating the Texas Ethics Commission "shall administer and enforce" the Election Code).

In sum, Plaintiffs cannot claim standing under the credible threat doctrine. "It is a long-settled principle that standing alone cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (holding that the party seeking jurisdiction must "clearly allege facts" demonstrating standing). Without clearly stating facts that support standing, Plaintiffs have not pleaded an actual case or controversy between themselves and Defendants. *See* U.S. Const. art. III. In this case, the

Court refuses to condone mere speculation about the likelihood of prosecution so as to avoid rendering an "advisory opinion on an abstract legal issue." *Valley v. Rapides Parish Sch. Bd.*, 145 F.3d 329, 332 (5th Cir.1998).

### ii. Overbreadth

■ In the alternative, Plaintiffs argue that they have standing to bring a facial First Amendment challenge under the overbreadth doctrine.[17] Resp. 12. Typically, a party may only assert that a law has violated his own constitutional rights; he cannot assert the rights of third parties. *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 380, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). However, the overbreadth doctrine provides an exception to this rule for facial First Amendment challenges. *Id.* The overbreadth doctrine allows parties to challenge the facial constitutionality of a statute on the grounds that it violates the First Amendment rights of third parties not before the court, even if the statute is constitutional as applied to that challenger. *Id.; see also* Erwin Chemerinsky, *Federal Jurisdiction* § 2.3, at 89–90 (5th ed. 2007). Courts justify relaxing the standing requirements in this manner because of the concerns that overbroad laws will chill protected speech and cause individuals to forgo speaking rather than incur the cost of bringing suit. *Bates*, 433 U.S. at 380, 97 S.Ct. 2691 ("The use of overbreadth analysis reflects the conclusion that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted."). "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

However, the overbreadth doctrine is "manifestly, strong medicine" and therefore only applies when the overbreadth is substantial. *Bd. of Airport Comm'rs of the City of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). In order for there to be substantial overbreadth, there must be a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800–801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Put simply, there must be numerous possible impermissible or illegitimate applications judged in relation to the statute's plainly legitimate applications. *Broadrick*, 413 U.S. at 625, 93 S.Ct. 2908; *see United States v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010); *New York v. Ferber*, 458 U.S. 747, 771–773, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Further, courts will refrain from applying the overbreadth doctrine when a narrowing construction is readily available. *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990).

Courts analyzing overbreadth must first construe the statute's scope, and then determine whether the statute regulates a substantial amount of expressive activity.

---

17. The overbreadth doctrine cannot be applied to confer standing to bring claims under the Fourteenth Amendment. *Schall v. Martin*, 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); Erwin Chemerinsky, *Federal Jurisdiction* § 2.3, at 90 (5th ed. 2007) ("The overbreadth doctrine appears limited to First Amendment cases."). Therefore, the Court only engages in an overbreadth analysis to determine whether Plaintiffs have alleged an injury for their First Amendment claims alone.

*United States v. Williams,* 553 U.S. 285, 293, 297, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Consequently, determining overbreadth for standing purposes often involves consideration of the merits of the underlying overbreadth challenge. *See Turchick v. United States,* 561 F.2d 719, 721 (8th Cir.1977) ("[S]tanding of an overbreadth claimant cannot be determined without some reference to the merits of the case."); Daniel E. Ho, *Did Liberal Justices Invent the Standing Doctrine? An Empirical Study of the Evolution of Standing,* 1921–2006, 62 Stan. L. Rev. 591, 618–19 & n. 130 (2010); Henry Paul Monaghan, *Overbreadth,* 1981 Sup. Ct. Rev. 1, 3 (1981) ("[O]verbreadth analysis is simply an examination of the merits of a substantive constitutional claim.").

■ Here, section 253.094(b) applies only to recall activities that constitute political contributions.[18] *See* Tex. Elec. Code Ann. § 253.094(b). Therefore, the Court turns to address whether Plaintiffs have pleaded that the statute regulates a substantial amount of protected activity. *See Williams,* 553 U.S. at 293, 297, 128 S.Ct. 1830.

Plaintiffs' sole argument regarding overbreadth is that section 253.094(b) can be impermissibly applied to prohibit the type of corporate speech that is protected by the Supreme Court's decision in *Citizens United.* Compl. ¶ 1; Resp. 20. In *Citizens United,* the Supreme Court of the United States held that § 203 of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), which prohibited corporations from making independent expenditures on "electioneering communications," or speech that expressly advocates the defeat or election of a candidate, violated the

First Amendment. *Citizens United,* 130 S.Ct. at 886, 913.

*Citizens United* drew a distinction between corporate contributions and independent expenditures based on "the potential for *quid pro* quo corruption" inherent in each. *Id.* at 901–903. Key to this distinction was the fact that "[b]y definition, an independent expenditure is political speech presented to the electorate that is not coordinated with a candidate," while contributions could involve "prearrangement and coordination" with a candidate. *Id.* at 902, 910. Citing previous opinions, the Court held that expenditures cannot be restricted based on the government's interest in curbing corruption because the "absence of prearrangement and coordination ... alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate." *Id.* at 903 (quoting *Buckley v. Valeo,* 424 U.S. 1, 47, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)). In sum, after *Citizens United* it appears that any government restriction on independent expenditures—or, speech that is uncoordinated with a candidate—is unconstitutional under the First Amendment because uncoordinated speech does not give rise to the existence or appearance of quid pro quo corruption. *Id.* However, corporate contributions—or, speech made in coordination with a candidate—may be regulated if based on an interest in preventing the existence or appearance of *quid pro quo* corruption. *See id.; see also SpeechNow.org v. Fed. Election Comm'n,* 599 F.3d 686, 693–95 (D.C.Cir.2010).

Here, Plaintiffs claim that section 253.094(b) prohibits speech protected by

---

**18.** Plaintiffs challenge four statutes in their Complaint: sections 253.094(b), 253.003, 253.005, and 253.031 of the Texas Election Code. Compl. ¶¶ 4–5. Plaintiffs made no argument that these sections are overbroad. Therefore, the Court only addresses whether section 253.094(b) is overbroad.

*Citizens United.*[19] Compl. ¶ 1; Resp. 20. However, unlike the statute at issue in *Citizens United*, section 253.094(b) was specifically drafted to restrict contributions rather than independent expenditures. Tex. Elec. Code Ann. § 253.094(b). As discussed, *Citizens United* does not prohibit restrictions on campaign contributions, as long as such restrictions further the prevention or appearance of *quid pro quo* corruption. *Citizens United*, 130 S.Ct. at 901–902, 913; *SpeechNow.org*, 599 F.3d at 694–95. The existence or appearance of *quid pro quo* corruption arises from a connection with a candidate. *See id.* at 901–902; *Buckley*, 424 U.S. at 47, 96 S.Ct. 612. Under Texas law, political contributions include contributions made to a candidate or made with the candidate's approval or consent, and thus could potentially give rise to the existence or appearance of *quid pro quo* corruption in the same way as the inappropriate contributions in *Citizens United*. *See* Tex. Elec. Code Ann. § 251.001(5); Op. Tex. Ethics Comm'n No. 500; Op. Tex. Ethics Comm'n No. 489. Because section 253.094(b) appears limited to restricting contributions that either cause or appear to cause *quid pro quo* corruption, section 253.094(b) is consistent with *Citizens United*.

Plaintiffs do not allege any other situation in which the statute would be unconstitutionally overbroad, and the Court cannot discern any such situation. Granted, if section 253.094(b) restricted political expenditures, then the Court's inquiry would be different. However, the statute does not do so. As such, the Court cannot find

that Plaintiffs have alleged that the statute restricts a "substantial amount of expressive activity" as is required to assert standing under the overbreadth doctrine. *See Williams*, 553 U.S. at 293, 297, 128 S.Ct. 1830; *Barrera–Montenegro*, 74 F.3d at 659 ("[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."). Seeing as the overbreadth doctrine is "manifestly strong medicine" that should be rarely invoked, the Court holds that Plaintiffs do not have standing under the overbreadth doctrine. *See Bd. of Airport Comm'rs*, 482 U.S. at 574, 107 S.Ct. 2568.

### iii. Summary

In sum, Plaintiffs have not asserted that they have a credible fear of enforcement, or that section 253.094(b) is overbroad. Plaintiffs have therefore not asserted an injury for standing or ripeness purposes.

### d. Causation and Redressability

Even if Plaintiffs had successfully asserted an injury, Plaintiffs do not have standing as against Cook and the City because they have failed to assert causation and redressability.[20]

Causation requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 304 (5th Cir.2000) (internal quotations omitted) (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130). Redressability requires the plaintiff to show that a favorable decision will redress the injury. *United States v. Hays,*

19. Citizens United applies to state campaign finance law. *Am. Tradition P'ship Inc. v. Bullock*, — U.S. —, 132 S.Ct. 2490, 183 L.Ed.2d 448 (2012).

20. Causation and redressability are two separate standing requirements. *Allen v. Wright*, 468 U.S. 737, 753 n. 19, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Nevertheless, the doctrines are viewed as interrelated. *See Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Therefore, the Court treats them as separate doctrines, but analyzes them within the same section of this Opinion.

515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Redress must be likely, rather than speculative. *Id.*

In § 1983 suits, the Fifth Circuit requires a defendant to have the authority to enforce a challenged statute in order to establish causation and redressability. *Okpalobi*, 244 F.3d at 426–27; *Stewart v. Bernstein*, 769 F.2d 1088, 1091 (5th Cir. 1985) (holding plaintiffs did not have standing because they did not allege that defendants "failed to enforce any existing laws or regulations that *they were authorized to enforce.*" (emphasis added)). For example, in *Okpalobi v. Foster*, abortion providers sued Louisiana's Governor and Attorney General, challenging the constitutionality of a statute imposing tort liability on abortion providers for injuries arising out of abortion procedures. 244 F.3d at 409. The statute at issue in *Okpalobi* provided patients with a private cause of action to sue doctors for harm caused by the abortion procedure. *Id.* at 409. The Fifth Circuit held that the plaintiffs had failed to satisfy the causation and redressability element of standing because the Attorney General and the Governor had no authority to enforce the statute. *Id.* at 426. Instead, the self-enforcing nature of the statute rendered the Attorney General and the Governor essentially powerless to enforce the complained-of statute or prevent private litigants from suing. *Id.* In the absence of such authority, the plaintiffs could not establish that either the Attorney General or Governor could cause them any injury, or that a favorable decision could redress the injury. *Id.* at 426–27 (cautioning courts against confusing "the statute's immediate coercive effect on the plaintiffs with any coercive effect that might be applied by the defendants-that is, the Governor and the Attorney General."). Apply-

ing *Okpalobi* to the instant case, causation and redressability depend on whether Defendants have the ability to enforce the Texas Election Code.

Abbott and Esparza both have authority to enforce the Election Code. *See* Tex. Elec. Code §§ 273.001–273.004, 273.021, 273.022. Thus, Plaintiffs could establish causation and redressability with respect to Abbott and Esparza.[21] *See Okpalobi,* 244 F.3d at 426–27.

■ With respect to the City, the Court has been unable to locate any statute, ordinance, or other legal instrument giving the City the power to enforce the Texas Election Code. Nevertheless, Plaintiffs attempt to show standing by asserting that the City, through Mayor Cook, has undertaken to enforce the Election Code against Plaintiffs. Resp. 9–12. Specifically, Plaintiffs assert that under state law, the Mayor's actions may be imputed to the City because "the Mayor 'presides over the City Council' " and has the ability to "represent the City in 'intra-governmental and intergovernmental relationships' which no doubt includes the City's appearance in and interaction with state courts." Compl. ¶¶ 24–25. Plaintiffs claim that the Mayor has brought an enforcement action against other churches and organizations, and has publicly stated that he took this action "pursuant to the oath of office he took as Mayor of El Paso." Compl. ¶¶ 22–23, 27; Resp. 10. Further, Plaintiffs assert that City has adopted such statements by refusing to explicitly disavow them. Compl. ¶ 29. Plaintiffs argue that these fact show that City is directly causing Plaintiffs injury by enforcing the Texas Election Code against churches engaged in the circulation of recall petitions. Resp. 10–12.

---

**21.** Nevertheless, as discussed above, Plaintiffs have not established an injury. Therefore,

Plaintiffs have no standing to sue Abbott or Esparza regardless.

It is true that the Mayor's actions could theoretically be imputed to the City if the Mayor was a final policymaker for the City. *See Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 136 (5th Cir.1990) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); *see also Will*, 491 U.S. at 71, 109 S.Ct. 2304 ("a suit against a state official in his or her official capacity ... is no different from a suit against the [government entity] itself."). However, here, Plaintiffs' assertions regarding the City's enforcement authority and the Mayor's status as a final policymaker are mere legal conclusions. The Court need not accept Plaintiffs' legal conclusions as true. *See Iqbal*, 556 U.S. at 680–81, 129 S.Ct. 1937. Simply stating that the City has enforcement power does not make it so. Instead, "state law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity." *Price v. Jefferson Cnty.*, 470 F.Supp.2d 665, 688 (E.D.Tex.2006) (citing *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996)). Here, there is no indication that the Mayor is a final policymaker with respect to Election Code enforcement or other election activities.

Further, the type of enforcement authority that Plaintiffs describe seems akin to the "general authority and responsibility" to execute the law, which was addressed in *Okpalobi*. *See Okpalobi*, 244 F.3d at 416. *Okpalobi* explicitly rejected that such authority can establish the requisite causal connection for justiciability purposes. *Id.* at 419, 426 (analyzing this issue in the context of an Eleventh Amendment challenge and utilizing the same reasoning to support the court's later discussion of standing). Accordingly, the Court finds that Plaintiffs have not established causation as against the City.

For similar reasons, there is no causal connection between Cook in his individual capacity as Mayor, and the alleged injury. The Court has been unable to locate any statute, ordinance, or other legal instrument giving the Mayor the power to enforce the Texas Election Code. In the absence of such enforcement power, there can be no standing as against the Cook in his individual capacity as Mayor. *See Okpalobi*, 244 F.3d at 416, 426–27.

Plaintiffs also seek to enjoin Cook, in his capacity as a private citizen, from enforcing the statute pursuant to the Texas Election Code's private right of action. *See* Compl. As support for standing, Plaintiffs state that Cook has already brought suit against other churches and threatened to file a lawsuit against Plaintiffs. Compl. ¶ 27; Resp. 8–9.

The Court is at a loss to see how granting an injunction against Cook would redress Plaintiffs' injury. A ruling against Cook in this case would operate only against Cook; it would not operate to prevent non-party citizens from bringing suit to enjoin Plaintiffs from circulating recall petitions in the future. To provide proper redress, the Court would have to enjoin the private cause of action itself; however, "an injunction prohibiting the world from filing private suits would be a flagrant violation of both Article III and the due process clause (for putative private plaintiffs are entitled to be notified and heard before courts adjudicate their entitlements)." *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir.2001). Enjoining Cook, as a citizen, from exercising the private right of action would still leave Plaintiffs exposed to lawsuits from other citizens able to exercise the private right of action. Therefore, it is not "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" on the

merits. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)) (quotation marks omitted).

### e. Summary

In sum, the Court holds that Plaintiffs have not sufficiently asserted a justiciable case or controversy in their Complaint. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (stating a party must show justiciability "with the manner and degree of evidence required at the successive stages of the litigation."). Consequently, the Court dismisses the case in its entirety.

### B. Remaining Motions and Arguments

Because the Court has determined that Plaintiffs do not have standing to bring this suit, the Court refrains from addressing the remaining arguments and motions. Accordingly, the Court denies Defendants' motion to dismiss pursuant to 12(b)(6) as moot. The Court also denies the PI Motion as moot.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Greg Abbott's Motion to Dismiss, ECF No. 35; Jaime Esparza's Motion to Dismiss, ECF No. 38; John Cook's Motion to Dismiss, ECF No. 41; City of El Paso and Mayor John Cook's Motion to Dismiss, ECF No. 47.

**IT IS FURTHER ORDERED** that the Court **DENIES** Plaintiff H. Warren Hoyt and Jesus Chapel's Motion for Preliminary Injunction ("PI Motion"), ECF No. 18, as moot.

**IT IS FURTHER ORDERED** that the Court **DENIES** City of El Paso's Rule 12(b) Mot. to Dismiss, ECF No. 5, Def. Greg Abbott's Mot. to Dismiss, ECF No. 14, and City of El Paso's Rule 12(b) Mot.

to Dismiss Pls.' First Am. Compl., ECF No. 20, as moot.

The Clerk shall close the case.

**SO ORDERED.**